## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MICKEY LEE MOODY,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1:08cv63-MHT** |
| | ) | **(CR No.1:05-cr-0195-LSC-SRW)** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

### UNITED STATES'S RESPONSE TO § 2255 MOTION

COMES NOW the United States of America ("the Government") by and through its attorneys, Leura G. Canary, United States Attorney, and Sandra J. Stewart, Assistant United States Attorney, and in compliance with this Court's January 30, 2008 order, as amended on February 27, 2008, responds to Petitioner Mickey Lee Moody's Motion Under § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody, as follows:

### I. PROCEDURAL HISTORY AND RELEVANT FACTS

On September 8, 2005, a grand jury in the Middle District of Alabama returned a one-count indictment against Petitioner Mickey Lee Moody ("Moody") charging him with being a felon in possession of a firearm. *See* GX A (Doc. 1)[1], a copy of the indictment, attached to this response. More specifically, the indictment charged that, on or about March 28, 2005, in Geneva County, in the Middle District of Alabama, Moody knowingly possessed a Davis Industries Model D-32, .32 caliber semi-automatic pistol, serial number 100873, after having been

---

[1]References to "Doc." are to the docket entries and documents in the criminal record in this case, criminal case number 1:05-cr-195-LSC-SRW.

1

convicted on August 21, 2001, in the Circuit Court of Covington County, Alabama, of two counts of unlawful possession of a controlled substance, a felony, in case number CC-2001-124. *Id*. The indictment also contained a forfeiture count requiring forfeiture of the firearm charged in the indictment upon Moody's conviction. *Id*. at 1-2. At his arraignment, Moody, represented by counsel, Christine A. Freeman, initially entered a plea of not guilty to the charge in the indictment. (Doc. 9)

On November 22, 2005, the Court granted an oral motion to have counsel appointed for Moody, and Robin C. Konrad and Christine A. Freeman, attorneys with the Federal Defender's Office in the Middle District of Alabama, entered appearances on behalf of Moody (Docs. 15, 18). Shortly thereafter, on December 13, 2005, Ms. Konrad filed a Motion To Withdraw As Counsel. *See* GX B (Doc. 19), a copy of the Konrad motion to withdraw, attached to this response. In her motion, as grounds for her request to withdraw, Konrad represented that "[o]n December 8, 2005, [she] discovered a conflict exist[ed] between the interests of Mr. Moody and the interests of former clients that requires counsel to withdraw from further representation of Mr. Moody." *Id*. at ¶ 3. Ms. Freeman also filed a Motion To Withdraw As Counsel on that same date asserting the exact same grounds in support of her motion. *See* GX C (Doc. 20), a copy of the Freeman motion to withdraw, attached to this response, at 1, ¶ 3. The Court granted both motions to withdraw (Docs. 21 & 22) and Bruce Maddox was appointed to represent Moody (Docs. 20, 21 & 23).

On January 3, 2006, Mr. Maddox filed a notice of appearance as counsel for Moody, along with an Unopposed Motion To Continue the trial date until April 24, 2006, on the grounds that he had only recently received the file in the case from Moody's previous attorneys and he

needed more time to prepare for trial, which was set to begin on January 23, 2006. (Docs. 25, 26) That motion was granted, although the Court only granted a continuance until February 13, 2006. (Doc. 27) Three days later, on January 6, 2006, Mr. Maddox filed another Unopposed Motion To Continue the trial date, again asking that the trial date be moved from February 13, 2006 to April 24, 2006 (Doc. 31), and he filed a Waiver Of Speedy Trial By Defendant signed by Moody, along with the motion, *see* GX D (Doc. 29), a copy of Moody's Waiver of Speedy Trial By Defendant, attached to this response. This second motion for a continuance was denied on January 11, 2006. (Doc. 33) On January 23, 2006, Mr. Maddox filed a Motion to Withdraw as counsel for Moody asserting that he had a spinal injury that required him to take a series of medicines, beginning on February 7, 2006, that would make it impossible for him to prepare and try the case. *See* GX E (Doc. 34), a copy of the Maddox motion to withdraw, attached to this response. The Court granted Mr. Maddox's motion to withdraw finding there was good cause for the motion. *See* GX F (Doc. 35), a copy of the order granting the Maddox motion to withdraw, attached to this response. The Court also appointed Maryanne Prince to represent Moody. *Id.*

On February 6, 2006, Ms. Prince entered a Notice of Appearance Of Counsel (Doc. 38) and she filed an Unopposed Motion To Continue Trial, *see* GX G (Doc. 39), a copy of the Unopposed Motion To Continue Trial, attached to this response. As grounds in support of her motion for a continuance, Ms. Prince cited her need to obtain the file in the case from Moody's previous attorney, Mr. Maddox, and her need to discuss the case with Moody. *See* GX G at 1, ¶¶ 2, 4. On February 7, 2006, Ms. Prince filed a Waiver of Speedy Trial Act Rights, signed by Moody, *see* GX H (Doc. 41), a copy of Moody's' Waiver of Speedy Trial Act Rights, attached to this response, and the Court granted the motion for continuance, resetting the trial for April 17,

2006 (Doc. 40).

    In a letter dated February 25, 2006 and stamped filed with the Court on March 3, 2006,

Moody sent a letter to the Court in which he complained about the representation he was

receiving from appointed counsel, Ms. Prince.  *See* GX I, a copy of Moody's February 25, 2006

letter, attached to this response.  On March 7, 2006, the Court ordered that counsel for Moody

respond to the allegations in the letter by March 9, 2006.  (Doc. 44)  Ms. Prince complied with

the Court's order outlining her response to the allegations in Defendant's Response To Order.

*See* GX J, a copy of Defendant's Response To Order, attached to this response.

    On March 10, 2006, Ms. Prince filed a Motion To File Out Of Time, requesting

permission to file a motion to suppress out of time, along with a Motion To Suppress.  *See* GX K

(Doc. 47) and GX L (Doc. 48), copies of the Motion To File Out Of Time and Motion To

Suppress, respectively, attached to this response.  In the motion to suppress, counsel for Moody

argued that he was stopped by law enforcement authorities without probable cause, he was

detained, searched, and his vehicle was searched, all without a search warrant, consent, or

probable cause.  *See* GX L.  Counsel argued that the evidence seized as a result of Moody's

unconstitutional arrest and the unconstitutional searches was due to be suppressed.  *Id.*  After the

Government filed a response, *see* GX M (Doc. 49), a copy of Government's Response To

Defendant's Motion To Suppress, attached to this response, the Court granted the motion to file

the motion to suppress out of time and it set a hearing date on Moody's motion to suppress, *see*

GX N (Doc. 50), copy of the Court's order, attached to this response.  That hearing date was

continued once on the unopposed motion of the Government.  *See* Docs. 51, 54.

    Before a suppression hearing could be held, counsel for Moody filed an Unopposed

4

Motion For Extension Of Time To Change Plea. *See* GX O (Doc. 59), a copy of the motion for an extension of time within which to change plea, attached to this response. In that motion, counsel for Moody represented that she and Moody had been involved in plea negotiations with the Government and they were ongoing at that point, but they would be resolved within two days. *Id*. That motion was granted by the Court (Doc. 60), and on April 7, 2006, Moody, through counsel, filed a Notice of Intent To Change Plea (Doc. 61).

Moody entered into a binding Rule 11(c)(1)(C), Fed.R.Crim.P., plea agreement with the Government. *See* GX P (Doc. 64), a copy of Moody's plea agreement, attached to this response. In return for Moody's plea of guilty to the indictment, the Government agreed: (1) a two-level reduction in the applicable offense level was appropriate pursuant to U.S.S.G.[2] § 3E1.1(a) for Moody's acceptance of responsibility and that, if Moody otherwise qualified for the third level reduction pursuant to U.S.S.G. § 3E1.1(b), the Government would move for that third-level reduction at sentencing; (2) to recommend a sentence at the low end of the Sentencing Guidelines range as accepted by the Court; (3) to agree that Moody would not receive a sentence in excess of 180 months, and that if the Court decided to sentence him to a sentence in excess of 180 months, he would have the right to withdraw his guilty plea; and (4) to evaluate any information provided by Moody within one year of sentencing and to consider, pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure, to a reduction in Moody's sentence for any substantial assistance he provided to the Government. *See* GX P at 3-4. In addition to pleading to count one of his

---

[2]"U.S.S.G." is a reference to the United States Sentencing Guidelines, specifically, in this case, it is to the March 27, 2006 Supplement to the 2005 version of the United States Sentencing Guidelines Manual, which was the version of the Guidelines used in determining the Sentencing Guidelines range applicable in this case.

indictment and to the forfeiture of the firearms in his possession, Moody also agreed to not commit any state, local, or federal offenses, and to fully comply with the cooperation agreement contained in the plea agreement. *Id*. at 4-6. Also, Moody agreed to waive his right to directly appeal or to collaterally attack his sentence in any post-conviction proceeding. *Id*. at 7. The plea agreement also contained a factual basis for the plea that simply tracked the language of the indictment. *Id*. at 6-7.

A change of plea hearing was held on April 10, 2006 before Magistrate Judge Susan Russ Walker, with Moody's consent (Doc. 63). *See* GX Q (Doc. 89), a copy of the April 10, 2006 change of plea hearing transcript, attached to this response. Moody appeared at the change of plea hearing, represented by counsel, Maryanne Prince. *See* GX Q at 1. After reviewing the terms of the plea agreement with Moody, the court proceeded to ask Moody questions under oath to determine whether he was entering his plea knowingly, intelligently, and voluntarily. During its colloquy with Moody, the Court asked Moody if he had "been treated recently for any mental illness or addiction to narcotic drugs of any kind", to which he responded "yes." *Id*. at 4. On further questioning, Moody stated that he had been treated at the Bullock County Correctional Facility, a state prison, before he came into federal custody, for "mental health, depression." *Id*. at 5. Moody told the Court that he was not on any medication for the depression or mental health problems he was having. *Id*. He also told the Court, in response to questioning, that he did not have any problems understanding the Court as a result of any mental health treatment or illness. *Id*. The Court told Moody to stop the Court and tell it if he was having any trouble understanding and if he needed the Court to go back over any matter. *Id*. at 5-6. Moody also told the Court that he was not under the influence, at that time, of any drug, medication, or alcoholic

beverage. *Id*. at 6.

Also during the plea colloquy, the Court asked Moody if he was "fully satisfied with the counsel, representation and advice given to you in this case by your attorney, Miss Prince", and Moody replied in the affirmative. *Id*. at 6.

The Court then proceeded to ascertain whether Moody understood the terms of his plea agreement; it ascertained whether he had been coerced into the plea; it explained to him the civil rights he was relinquishing by pleading guilty; it explained the maximum and minimum penalties Moody was facing; and it explained the application of the Sentencing Guidelines. *Id*. at 6-10. The Court then addressed the appeal waiver contained in Moody's plea agreement. *Id*. at 10. Specifically, the Court asked Moody: "And do you understand that by entering into this plea agreement and entering a plea of guilty, you will have waived or given up your right to appeal or to collaterally attack all or part of your sentence?" *Id*. Moody replied, "Yes, ma'am." *Id*.

After explaining the trial rights Moody was relinquishing, the Court went over the charges in the indictment and the elements the Government would have to prove if the case went to trial. *Id*. at 10-13. Next, a factual basis for the plea was established, as follows:

> MR. COOKE [AUSA]:  Your Honor, at trial, the Government would have shown that on the date as specified in the indictment, that is on or about March 28, 2005 in Geneva County within the Middle District of Alabama, Mr. Moody, having been convicted back on August 21st of 2001 with a felony, that is two counts of unlawful possession of a controlled substance in the Circuit Court of Covington County, Alabama, possessed the handgun as specified, the Davis Industries model P thirty-two, a thirty-two caliber semiautomatic pistol.

> Basically, we would have shown that officers there near the defendant's home were looking for an escapee, and in doing so they were approached by this defendant –

> THE COURT:  Let me stop you.  Really we need to get him to answer

your questions with regard to this offense to establish the factual basis.  So if you would, let's ask him questions, or his counsel can do that.  And let's see if he agrees to what you're saying.

MR. COOKE:  Okay.  Mr. Moody, do you agree that back on March 28 of 2005 that you were in Geneva County within the Middle District of Alabama?

A [THE DEFENDANT]:  Yes, sir.

MR. COOKE:  And at that time did you have a conversation with certain law enforcement officers near your home?

A.      Yes, sir.  They stopped me.

MR. COOKE:  And when you spoke with them, did you in fact possess the handgun that's specified in the indictment?  You've heard me mention that to the judge, the Davis Industries model D 32, thirty-two caliber semiautomatic pistol?

MS. PRINCE [DEFENSE COUNSEL]:  I think the better way to put that would be at the time that you were searched by Deputy Block at the scene on March 28, did the deputy in fact find a handgun on your person?

A.      It's hard for me to answer that honestly.  You know the situation I'm in.

MS. PRINCE:  Yes, I know.

A.      Well I never seen the gun.

MS. PRINCE:  Okay, but when you were searched did the deputy find a handgun in your belt?  Yes, or no?

A.      I had a telephone in my hand, ma'am.

THE COURT:  I can't hear you.

Mr. Moody, you don't have to plead guilty.  You can proceed to trial.  So if you don't believe that you possessed, and knowingly possessed a firearm in or affecting interstate commerce, then you don't have to say that you did.

Let me ask you the question again, and it's up to you as to what your answer is.  Did you knowingly possess a firearms [sic.], specifically the firearm that's charged in the indictment, on the date in question, which was March 28, 2005 in Geneva County?

A.     Ma'am, could I ask my lawyer a question on that?

THE COURT:  Yes, you may.  Take a moment and speak with your lawyer.

(Whereupon, the defendant conferred with Ms. Prince off the record and out of the hearing of the other courtroom participants.)

THE COURT:  Do you want to put the question again?

MS. PRINCE:  Yes.

THE COURT:  All right.  Go ahead.

MS. PRINCE:  Mr. Moody, the question is, do you agree that when Deputy Lock searched you, he found a handgun on your person?

A.     Yes, ma'am.

THE COURT:  All right.  Y'all go ahead and proceed, if you wish.

MS. PRINCE:  I believe we've already done the Middle District.

MR. COOKE:  We've already covered this is in the Middle District of Alabama.

MS. PRINCE:  The other element, as far as interstate commerce, we would stipulate that – he would be able to stipulate that this gun traveled within interstate commerce.

THE COURT:  All right.  Mr. Moody, do you agree with that?

A.     Yes, ma'am.

MR. COOKE:  One other thing, Your Honor.

Mr Moody, do you agree that on that date, that you had previously been convicted of a felony in the Circuit Court of Covington County, that is two counts of possession of a controlled substance?

A.     Yes, sir.

THE COURT:  You understand that those were felony convictions?

9

A.      Yes, ma'am.

*Id*. at 13-17.  After then explaining to Moody the Armed Career Criminal Act and the mandatory minimum sentence and maximum sentence under the Act, should it apply, *id*. at 17-18, Moody entered his plea of guilty, and the Court accepted that guilty plea, *id*. at 18-19.  In doing so, the Court found Moody was "fully competent and capable of entering an informed plea, that [he was] aware of the nature of the charges and the consequences of the plea, and that the plea of guilty [was] a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense."  *Id*. at 19.

After the guilty plea, but before sentencing, counsel for Moody entered a Motion To Withdraw As Counsel Of Record And For Appointment Of CJA Panel Attorney.  *See* GX R (Doc. 69), a copy of the Prince motion to withdraw, attached to this response.  In support of her motion to withdraw, Ms. Prince represented that she was moving with her spouse to the State of Maine.  *See* GX R at 1, ¶ 1.  She also represented that she had discussed Moody's case with another CJA Panel attorney, Mr. John M. Poti, and that he had agreed to take on the representation of Moody.  *Id*. at 1, ¶ 3.  Ms. Prince asked the Court to appoint Mr. Poti to represent Moody.  *Id*.  The Court granted Ms. Prince's motion, allowing her to withdraw and appointing Mr. Poti as counsel for Moody.  (Doc. 70)

A presentence investigation report was prepared on Moody (Doc. 83, under seal) and a sentencing hearing was held on September 7, 2006 before District Court Judge L. Scott Coogler, *see* GX S (Doc. 85), a copy of the September 7, 2006 sentencing hearing, attached to this response.  Moody was represented at that hearing by Mr. Poti.  *See* GX S at 1.

At the sentencing hearing, the Court first took up the matter of any objections by Moody

to the presentence report.  *See* GX S at 2-3.  Moody objected to paragraphs 22 and 33 of the presentence report in which the probation officer found that Moody's September 1982, Geneva County, third-degree burglary charge and conviction was a qualifying crime of violence conviction for purposes of the Armed Career Criminal Act.  *Id*. at 3.  The basis of the objection was that the application note to the applicable Sentencing Guideline, U.S.S.G. § 4B1.2, specifically stated that the burglary, to qualify, had to be a burglary of a dwelling to be a crime of violence, and the burglary at issue was a burglary of a drugstore.  *Id*.  Further, the burglary did not involve the use of a weapon, there were no injuries, there were no threats of violence, and no actual violence occurred during the commission of the offense.  *Id*.

In response, the probation officer informed the Court that it was necessary to look to the statutory provisions of the Armed Career Criminal Act, not the Sentencing Guidelines, to determine if a prior conviction qualified as a crime of violence – and therefore as a qualifying offense – under the Armed Career Criminal Act.  *Id*. at 3-4.  The probation officer explained that, under 18 U.S.C. § 924(e)(2)(B)(ii), "violent felony" included any crime punishable by imprisonment for a term exceeding one year that is burglary, arson, or extortion, etc."  *Id*. at 3-4.  The burglary did not have to be of a dwelling to be a qualifying offense under the statute.  *Id*.  After discussion, and explanation by the Court, about the application of § 924(e)(2)(B)(ii), the Court agreed with the probation officer that the prior burglary conviction constituted a crime of violence under the Armed Career Criminal Act and that, as a result, Moody was facing a mandatory minimum sentence of 15 years.  *Id*. at 4-12.  The Court overruled Moody's objections to the presentence report on that basis.  *Id*.

The Court determined that the Sentencing Guidelines offense level was 30, the criminal

history category was VI, resulting in a Sentencing Guidelines range of from 180 to 210 months' imprisonment, a supervised release period of two to three years, and a fine range of from $15,000 to $150,000. *Id*. at 12. It then stated its recognition that the Sentencing Guidelines were merely advisory and one factor that the Court would consider along with the other factors outlined in 18 U.S.C. § 3553 in fashioning a reasonable sentence for Moody. *Id*. at 12-13. And it asked Moody if he had any mitigation to present before his sentence was pronounced. *Id*. at 13. The only mitigation presented by Moody were his health problems. *Id*. Moody had recently been told that he had a spot or tumor on his left lung, and that he also had liver and thyroid problems. *Id*. He asked to be placed in an appropriate facility so that those health problems could be addressed. *Id*.

After allocution by Moody, *id*. at 14, the Court imposed sentence. The Court sentenced Moody to the minimum sentence he could receive under the applicable Armed Career Criminal Act – 180 months in prison. *Id*. at 15. The Court also ordered that, on his release from prison, Moody was to serve a supervised release period of three years, subject to standard, mandatory, and special conditions; he was to pay a special assessment of $100; he was to forfeit the firearm involved in the offense of conviction; and that any fine was waived, due to Moody's inability to pay. *Id*. at 14-17. After the Court informed Moody of his right to appeal, *id*. at 18, the proceedings were adjourned. A final judgment was entered in the case on September 8, 2006. *See* GX T (Doc. 80), a copy of Moody's final judgment, attached to this response.

Moody appealed his sentence to the Eleventh Circuit Court of Appeals, despite his waiver in his plea agreement to all appeals, direct and collateral. (Doc. 81) In his brief to that Court, Moody raised a single issue: "Whether the district court erred by holding that the defendant's 1982 third degree burglary conviction in Alabama was a qualifying conviction under 18 U.S.C. §

924(e)." *See* GX U, a copy of Moody's brief to the Eleventh Circuit, attached to this response, at 1. On February 9, 2007, the Eleventh Circuit, in an unpublished per curiam opinion, rejected Moody's argument and affirmed Moody's sentence. *See* GX V, a copy of the Eleventh Circuit's decision in this case, *United States v. Moody*, No. 06-15114 (11th Cir. Feb. 9, 2007) (unpub.). Moody did not further appeal his sentence. He filed his motion under 28 U.S.C. § 2255 on January 21, 2008.

## II. CLAIMS RAISED IN THE § 2255 MOTION

In his § 2255 motion, and in his Memorandum of Law In Support Of The Motion Under 28 U.S.C. § 2255 ("Memorandum of Law"), it appears that Moody has raised the following claims for relief:

1.  He was denied the effective assistance of counsel when four different attorneys were appointed to represent him and each withdrew. Such repeated change of counsel, without cause, was presumptively prejudicial. *See* Ground One of the motion, at pages 5 and 5.1-5.3, ¶¶ 1-25; Moody's Memorandum of Law, at page 1, ¶¶ 1-7.

2.  He was denied his speedy trial rights when each attorney who was appointed to represent him withdrew from his/her representation of Moody with no reason for doing so. *See* Ground One of the motion, at pages 5.3-5.4, ¶¶ 22, 27-29.

3.  His counsel were all ineffective because none of them explained to him his speedy trial rights so he could make an informed decision to waive those rights. *See* Ground One of the motion, at pages 5.3-5.4, ¶ 27; Moody's Memorandum of Law, at page 4, ¶ 21.

4.  He was forced to plead guilty while represented by Ms. Prince, because Ms. Prince was not doing the things he was asking that she do on his behalf. *See* Ground One of the motion, at page 5.3, ¶ 24.

5.  His counsel were ineffective because they had information regarding his mental problems and being under the care of a psychiatrist, but they did not request a competency hearing to determine his competency at the time

of the offense or at sentencing.  He was prejudiced by these failures of counsel because he would, at least, have received a sentence at the low end of the Sentencing Guidelines range if they had presented this evidence to the Court for its consideration and it would have provided him a viable defense, if he had proceeded to trial.  *See* Ground One of the motion, at page 5.3, ¶ 26; Ground Two of the motion, at pages 5.5-5.6, ¶¶ 2-11; Moody's Memorandum of Law, at pages 2-3, ¶¶ 12-13.

6.    He was incompetent in fact and therefore he could not be tried (or plead guilty).  *See* Ground Three of the motion, at page 5.5, ¶ 8.

7.    His counsel was ineffective at sentencing because he allowed the prosecutor to use his nonviolent third degree burglary conviction to enhance his sentence under the Armed Career Criminal Act.  *See* Ground Two of the motion, at pages 5 and 5.4, ¶¶ 1-5; Moody's Memorandum of Law, at pages 4-6, ¶¶ 1-11.

8.    His counsel was ineffective at sentencing because counsel was in possession of material confirmed by the probation officer in the presentence investigation report that Moody was seeing a psychiatrist at the time of the offense, but counsel did not use that information to ask for a reduction in Moody's sentence.  *See* Ground Three of the motion, at pages 5 and 5.5-5.6, ¶¶ 1-11.

9.    His counsel, Ms. Prince, was ineffective when she refused to reply by letter or phone to his inquiries or to his attempts to contact her.  *See* Moody's Memorandum of Law, at page 2, ¶¶ 8-9.

10.    His prior convictions were not properly proved by court records as required.  *See* Moody's Memorandum of Law, at page 3, ¶¶ 14-15.

11.    His counsel were ineffective for failing to object to the failure of the prosecution to prove his prior convictions with constitutionally valid evidence.  *See* Moody's Memorandum of Law, at page 4, ¶ 21

12.    He was denied his right to a suppression hearing due to counsel's withdrawal from representing him.  *See* Moody's Memorandum of Law, at page 3, ¶ 16.

13.    He was denied the effective assistance of counsel by all of his attorneys because none of them consulted with him on important decisions or kept him informed of important developments during the course of his prosecution.  *See* Moody's Memorandum of Law, at page 4, ¶ 19.

14.    His sentencing counsel was ineffective for failing to request a downward departure under U.S.S.G. § 5K2.13 on the grounds of diminished capacity. *See* Moody's Memorandum of Law, at page 4, ¶ 21.

15.    His prior burglary conviction should not have been used to enhance his sentence under the Armed Career Criminal Act because it was not a violent felony under state law. *See* Moody's Memorandum of Law, at pages 4-6, ¶¶ 1-11.

Although Moody has filed his § 2255 motion in a timely manner, all of Moody's claims for relief should be rejected because they were all waived by the terms of the plea agreement; the non-ineffective assistance of counsel claims are barred from this Court's review because they could have been raised on direct appeal, but they were not, and Moody has not demonstrated cause and prejudice to overcome those procedural defaults; and because all of the claims are without merit.

### III.  RESPONSE TO CLAIMS FOR RELIEF

**A.    Moody Has Met The One-Year Statute of Limitations Under 28 U.S.C. § 2255.**

Moody has filed his § 2255 motion in a timely manner under paragraph six of 28 U.S.C. § 2255, which provides a one-year period of time to seek relief under the rule.  Section 2255 states that a motion must be filed within one year from

(1)  the date on which the judgment of conviction becomes final;

(2)  the date on which the impediment to making a motion created by governmental action in violation of the Constitution and laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3)  the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)  the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255 ¶ 6. The relevant date for purposes of Moody' § 2255 motion is paragraph (1), the date on which the judgment of conviction became final.

The final judgment in Moody's criminal case was entered on September 8, 2006. *See* GX T (Doc. 80). He timely appealed his sentence to the United States Court of Appeals for the Eleventh Circuit, which issued its opinion in the case on February 9, 2007. *See* GX V. A judgment of conviction becomes final for someone who appeals to an appellate court, but not to the Supreme Court thereafter, when the time for seeking certiorari review in the Supreme Court expires. *See Close v. United States,* 336 F.3d 1283, 1284-85 (11th Cir. 2003); *Kaufman v. United States*, 282 F.3d 1336, 1337-39 (11th Cir. 2002). Moody had 90 days from the February 9, 2007 opinion in which to file a petition for a writ of certiorari in the United States Supreme Court, and his conviction and sentence became final for purposes of § 2255 when that 90 days was ended. *See* Sup.Ct. R. 13(1) and (3); *see also Close v. United States*, 336 F.3d at 1284-85. His conviction and sentence became final, therefore, on May 10, 2007. Under § 2255, Moody then had until May 10, 2008 – one year after May 10, 2007 – to file his motion. He filed the instant motion on January 21, 2008. It is, therefore, timely under the limitation period in § 2255 ¶ 6(1).

**B.     All Of Moody's Claims For Relief Are Barred Because He Waived All Rights To Appeal Or To Collaterally Attack His Sentence As A Part Of His Plea Agreement.**

Moody agreed to waive his right to directly appeal his conviction and sentence and to request relief pursuant to 28 U.S.C. § 2255 when he entered into his guilty plea agreement on April 10, 2006. *See* GX P at 7. Specifically, the plea agreement provided:

## DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK

Understanding that 18 U.S.C. § 3742 provides for appeal by a defendant of the sentence under certain circumstances, the defendant expressly waives any and all rights conferred by 18 U.S.C. § 3742 to appeal his sentence. Defendant further expressly waives the right to appeal the sentence on any other ground and waives the right to attack the sentence in any post-conviction proceeding.

The government does not waive its right to appeal any order dismissing the Indictment, vacating a sentence, or otherwise terminating the prosecution at any stage of the proceedings. Further, the parties agree that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in 18 U.S.C. § 3742(b).

*Id*. at 7. Moody's signature on his plea agreement indicates he understood the entire agreement, including the waiver of his right to seek any post-conviction relief. *Id*. at 13. He also indicated at his guilty plea hearing that he understood he was waiving his right to any appeal. *See* GX Q at 10. There were no exceptions to this complete waiver of any appellate rights. *See* GX P at 7.

The Eleventh Circuit views Moody's waiver of his right to seek relief under § 2255 as a contract between the United States and a criminal defendant. *United States v. Howle*, 166 F.3d 1166, 1168 (11th Cir. 1999). It has been held that "a waiver of the right to seek federal habeas review must be 'an intentional relinquishment or abandonment of a known right,' the right to federal habeas review." *Allen v. Thomas*, 161 F.3d 667, 670 (11th Cir. 1998). Similarly, waiver of the right to seek § 2255 relief must consist of an intentional abandonment of that right. The record in this case demonstrates that the Court ascertained that Moody's assent to the terms of his plea agreement was knowing and voluntary, including his waiver of all appellate rights. *See* GX Q at 19. Therefore, all of the claims are procedurally barred from review by this Court because Moody affirmatively waived his right to raise those claims.

C.    **Moody's Non-Ineffective Assistance Of Counsel Claims Should Be Rejected Because They Are Procedurally Not Properly Before This Court And Because They Have No Merit**.

In his §2255 motion, Moody raises the following substantive, non-ineffective assistance of counsel claims for relief:

2.    He was denied his speedy trial rights when each attorney who was appointed to represent him withdrew from his/her representation of Moody with no reason for doing so.  *See* Ground One of the motion, at pages 5.3-5.4, ¶¶ 22, 27-29.

4.    He was forced to plead guilty while represented by Ms. Prince, because Ms. Prince was not doing the things he was asking that she do on his behalf.  *See* Ground One of the motion, at page 5.3, ¶ 24.

6.    He was incompetent in fact and therefore he could not be tried (or plead guilty).  *See* Ground Three of the motion, at page 5.5, ¶ 8.

10.    His prior convictions were not properly proved by court records as required.  *See* Moody's Memorandum of Law, at page 3, ¶¶ 14-15.

12.    He was denied his right to a suppression hearing due to counsel's withdrawal from representing him.  *See* Moody's Memorandum of Law, at page 3, ¶ 16.

15.    His prior burglary conviction should not have been used to enhance his sentence under the Armed Career Criminal Act because it was not a violent felony under state law.  *See* Moody's Memorandum of Law, at pages 4-6, ¶¶ 1-11.

Four of these claims are barred from this Court's review because they could have been raised on direct appeal, but they were not; one is barred because it was decided adversely to Moody on direct appeal; and one is barred because he has not pleaded sufficient facts to demonstrate he is entitled to relief on the claim.

18

1.    **Claims 2, 4, 10, and 12 Could Have Been Raised On Direct Appeal, But For Moody's Waiver Of His Right To Appeal, But They Were Not, Therefore They Are Procedurally Defaulted And Not Properly Reviewed In This § 2255 Proceeding.**

In his §2255 motion, Moody raised the following substantive claims for relief that are barred from review in this collateral proceeding because they could have been raised on direct appeal, but they were not:

2.    He was denied his speedy trial rights when each attorney who was appointed to represent him withdrew from his/her representation of Moody with no reason for doing so. *See* Ground One of the motion, at pages 5.3-5.4, ¶¶ 22, 27-29.

4.    He was forced to plead guilty while represented by Ms. Prince, because Ms. Prince was not doing the things he was asking that she do on his behalf. *See* Ground One of the motion, at page 5.3, ¶ 24.

10.    His prior convictions were not properly proved by court records as required. *See* Moody's Memorandum of Law, at page 3, ¶¶ 14-15.

12.    He was denied his right to a suppression hearing due to counsel's withdrawal from representing him. *See* Moody's Memorandum of Law, at page 3, ¶ 16.

Because these four claims could have been raised on direct appeal, but they were not, and because Moody has not presented this Court with any cause or prejudice to overcome his procedural defaults, the claims should be rejected.

A motion under § 2255 cannot be used as a substitute for appeal, *see Burke v. United States*, 152 F.3d 1329, 1331 (11th Cir. 1998), and claims not raised on direct appeal that could have been are generally barred from review in § 2255 proceedings, *see Massaro v. United States*, 538 U.S. 500, 504 (2003); *McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001). In *Mills v. United States*, 36 F.3d 1052 (11th Cir. 1994), the Eleventh Circuit succinctly

summarized the law concerning procedural default as follows:

> Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a [Section] 2255 proceeding....  A ground of error is usually "available" on direct appeal when its merits can be reviewed without further factual development....  When a defendant fails to pursue an available claim on direct appeal, it will not be considered in a motion for [Section] 2255 relief unless he can establish  cause for the default and actual prejudice resulting from the alleged error....   Alternatively, under the fundamental miscarriage of justice exception, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default....

*Id*. at 1055-56 (internal citations omitted).  *See also McCoy v. United States*, 266 F.3d at 1258

("A claim not raised on direct appeal is procedurally defaulted unless the petitioner can establish

cause and prejudice for his failure to assert his claims on direct appeal.").  The burden of

demonstrating cause and prejudice or a miscarriage of justice is on the movant.  *See*, *e.g.*,

*Bousley v. United States*, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally

defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if

the defendant can first demonstrate either 'cause' and actual 'prejudice,'... or that he is 'actually

innocent[.]' ").

As noted, Moody offers nothing to support a cause and prejudice, or actual innocence,

analysis, and the burden to establish those things is on him.  Because he has failed in his burden,

this Court should reject claims 2, 4, 10 and 12 of the § 2255 motion.[3]

_____

[3]Moody has also raised a number of ineffective assistance of counsel claims in his § 2255 motion, but he has not asserted ineffective assistance of counsel to overcome his procedural defaults of claims 2, 4, 10, and 12.  To the extent that he does rely on any of his ineffective assistance of counsel claims to overcome his procedural defaults, for the reasons outlined below, his counsel was not ineffective and, therefore, Moody has failed to demonstrate the necessary cause and prejudice to overcome those procedural defaults.  *See*, *e.g.*, *Black v. United States*, 373

**2.    Claim 6 Of Moody's § 2255 Motion Is Barred From This Court's Review Because It Was Decided Adversely To Him On Direct Appeal, And He Cannot Relitigate That Claim In This § 2255 Proceeding.**

On direct appeal of his sentence, Moody raised the following claim: "Whether the district court erred by holding that the defendant's 1982 third degree burglary conviction in Alabama was a qualifying conviction under 18 U.S.C. § 924(e)." *See* GX U at 1.   In its unpublished opinion in this case, the Eleventh Circuit addressed the issue and rejected it. *See* GX V, *United States v. Moody*, No. 06-15114 (11th Cir. Feb. 9, 2007) (unpub.).   In claim 15 of his motion, Moody raises the exact same claim.   That claim is barred from this Court's review.   As the Eleventh Circuit noted in *United States v. Nyhuis*, "[o]nce a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." *See United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) (internal quotation marks omitted), *citing United States v. Natelli*, 553 F.2d 5, 7 (2d Cir. 1977).

**3.    Moody's Claim 6, That He Was Incompetent In Fact And He Could Not Therefore Be Tried Or Plead Guilty, Should Be Rejected Because He Has Not Pleaded Sufficient Facts To Support That Contention Or To Entitle Him To A Hearing On That Claim, And It Should, Therefore, Be Rejected.**

In the claim identified as 6, above, Moody alleges that he was incompetent in fact at the time he pleaded guilty and that he could not, therefore, be tried or plead guilty, as he did.   It appears that he raised that claim for relief in Ground Three of his motion, at page 5.5, ¶ 8. Although Moody is raising this substantive competency claim for the first time in this collateral proceeding, it is not barred from this Court's review.   However, because he has failed to allege

---

F.3d 1140, 1146 (11th Cir. 2004) ("As [the defendant] cannot show that his ... counsel's performance was deficient, he cannot show that he received ineffective assistance of counsel as to overcome his procedural default for not raising this issue on direct appeal.").

facts sufficient to establish by clear and convincing evidence a real, substantial, and legitimate doubt about his competency to plead guilty, he is not even entitled to an evidentiary hearing on his claim, much less any relief on that claim.

A "substantive" competency claim, like Moody's "is not subject to procedural default and must be considered on the merits." *Battle v. United States*, 419 F.3d 1292, 1298 (11th Cir. 2005) (internal quotation marks omitted), *citing Medina v. Singletary*, 59 F.3d 1095, 1111 (11th Cir. 1995). However, a petitioner in a collateral proceeding, like this one, is not entitled to a presumption of incompetency and bears the burden of establishing his incompetence by a preponderance of the evidence. *See Johnston v. Singletary*, 162 F.3d 630, 637 (11th Cir. 1998); *Medina v. Singletary*, 59 F.3d at 1106. Moreover, before he can even get to a hearing on the competency issue, a petitioner in a collateral proceeding must present "clear and convincing evidence creating a real, substantial and legitimate doubt as to his competence to stand trial." *Johnston v. Singletary*, 162 F.3d at 637 (internal quotation marks omitted), *citing Medina v. Singletary*, 59 F.3d at 1106; *accord, Battle v. United States*, 419 F.3d at 1298-99. "This standard of proof is high; and 'the facts must positively, unequivocally, and clearly generate the legitimate doubt.' " *Battle v. United States*, 419 F.3d at 1299. "Incompetency means 'suffering from a mental disease or defect rendering [defendant] mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.' " *Battle v. United States*, 419 F.3d at 1298, *citing* 18 U.S.C. § 4241(a).

In support of his claim that he was incompetent to go to trial or to plead guilty, Moody asserts only that he was on psychotropic medication at the time of his offense in this case and under the care of a psychiatrist. *See* Ground Three of the motion, at page 5.5, ¶ 2; Memorandum

22

of Law, at page 2,, ¶¶ 12.  These bald assertions, even if true, are alone insufficient to entitle

Moody to an evidentiary hearing on the substantive competency claim or to any relief on his

claim of incompetency.  *See*, *e.g.*, *Medina v. Singletary*, 59 F.3d at 1107 ("The fact that a

defendant has been treated with anti-psychotic drugs does not *per se* render him incompetent to

stand trial.").  They certainly are not sufficient to positively, unequivocally, and clearly establish

a legitimate doubt about his competency.

　　Moreover, other evidence in the record indicates that Moody was competent at the time

he entered his guilty plea in this case.  First, the Court questioned Moody at the change of plea

hearing to determine if he were competent to enter his plea.  *See* GX Q at 4-6.  At that hearing,

Moody represented to the Court, under oath, that he had recently seen a counselor at the Bullock

County Correctional Facility and had been treated for depression, but that he had not been

prescribed any medication for that depression.  *Id*. at 4-5.  Moody also told the Court that he had

no problem understanding the Court and assured the Court that, if he did not understand

something or needed the Court to go back over something, he would let the Court know.  *Id*. at 5-

6.  He also told the Court that he was not, at that time, under the influence of any drug,

medication, or alcoholic beverage of any kind.  *Id*. at 6.  Moreover, the change of plea hearing

reflects instances in which Moody seemed to understand what was going on, and he challenged

matters during the proceeding when he was not sure of the consequences.  *See* GX Q.  Finally,

there is nothing in the change of plea hearing – or in anything else before the Court – indicating

that Moody was having any trouble understanding the proceedings against him or in assisting his

counsel in defending him.  *Id*.  At the conclusion of the change of plea hearing, the Court found

Moody "fully competent and capable of entering an informed plea, that [he was] aware of the

nature of the charges and the consequences of the plea, and that the plea of guilty [was] a

knowing and voluntary plea supported by an independent basis in fact containing each of the

essential elements of the offense." *Id*. at 19.

Further, the three attorneys who represented Moody and provided this Court with

affidavits, all state in their affidavits that they believed Moody was competent at the time of their

interactions with him. *See* Affidavit of Bruce Maddox, at 2, ¶ 2 ("During my interview with Mr.

Moody at the jail, he told me that he had mental problems that could be documented. I frankly

believed that his insight into defenses based upon his mental condition was such that he was

competent and, in fact, manipulative of the judicial system."); Affidavit of Maryanne M. Prince,

at 3, ¶ 12 ("Affiant's observations made during her discussions with [Moody] did not lead her to

believe that [Moody] was not competent as he understood various motions, had definite ideas

about what he wanted, and discussed at length the suppression issue that had been filed.

[Moody] did not display any indicia of mental incapacity that would impact his competency or

his ability to understand the legal proceedings or participate in his legal defense and make

decisions concerning his case. [Moody] may have been under psychiatric care or medication may

have been a sentencing issue, it did not come up as an issue that would impact his ability to stand

trial."); Affidavit of John M. Poti, at 3 ("At no time during my representation of Moody did I feel

that he was not competent to understand the nature of the proceedings against him, or to

participate in his defense and decision making process."). These affidavits also refute Moody's

bald, unsupported assertion that he was incompetent at the time he entered his guilty plea.

Because Moody has not presented this Court with facts that positively, unequivocally, and

clearly generate a doubt about his competency to stand trial or enter a guilty plea, this Court

should reject Moody's claim without an evidentiary hearing on the matter.  Moody has simply

failed to present this Court with the necessary evidence to entitle him to such a hearing.[4]

**D.**    **All Of Moody's Ineffective Assistance Of Counsel Claims Should Also Be Rejected Because, As To Each Claim, Moody Has Failed To Establish That His Counsel's Performance Was Deficient And That He Was Prejudiced As A Result.**

In addition to the substantive claims addressed above and which are barred from this

Court's review, Moody appears to raise nine claims of ineffective assistance of counsel.  Those

claims are the following:

1.    He was denied the effective assistance of counsel when four different attorneys were appointed to represent him and each withdrew.  Such repeated change of counsel, without cause, was presumptively prejudicial.  *See* Ground One of the motion, at pages 5 and 5.1-5.3, ¶¶ 1-25;  Moody's Memorandum of Law, at page 1, ¶¶ 1-7.

3.    His counsel were all ineffective because none of them explained to him his speedy trial rights so he could make an informed decision to waive those rights.  *See* Ground One of the motion, at pages 5.3-5.4, ¶ 27; Moody's Memorandum of Law, at page 4, ¶ 21.

5.    His counsel were ineffective because they had information regarding his mental problems and being under the care of a psychiatrist, but they did not request a competency hearing to determine his competency at the time of the offense or at sentencing.  He was prejudiced by these failures of counsel because he would, at least, have received a sentence at the low end of the Sentencing Guidelines range if they had presented this evidence to the Court for its consideration and it would have provided him a viable defense, if he had proceeded to trial.  *See* Ground One of the motion, at page 5.3, ¶ 26; Ground Two of the motion, at pages 5.5-5.6, ¶¶ 2-11; Moody's Memorandum of Law, at pages 2-3, ¶¶ 12-13.

---

[4]To the extent that Moody also claims he was incompetent at the time of the offense in this case, that claim is procedurally defaulted because it could have been raised in the district court at the trial stage of his proceedings and on appeal, but it was not.  Moreover, he has presented absolutely no facts or argument to support that claim.  For those reasons, it should likewise be rejected without an evidentiary hearing on the issue.

7.     His counsel was ineffective at sentencing because he allowed the prosecutor to use his nonviolent third degree burglary conviction to enhance his sentence under the Armed Career Criminal Act. *See* Ground Two of the motion, at pages 5 and 5.4, ¶¶ 1-5; Moody's Memorandum of Law, at pages 4-6, ¶¶ 1-11.

8.     His counsel was ineffective at sentencing because counsel was in possession of material confirmed by the probation officer in the presentence investigation report that Moody was seeing a psychiatrist at the time of the offense, but counsel did not use that information to ask for a reduction in Moody's sentence. *See* Ground Three of the motion, at pages 5 and 5.5-5.6, ¶¶ 1-11.

9.     His counsel, Ms. Prince, was ineffective when she refused to reply by letter or phone to his inquiries or to his attempts to contact her. *See* Moody's Memorandum of Law, at page 2, ¶¶ 8-9.

11.    His counsel were ineffective for failing to object to the failure of the prosecution to prove his prior convictions with constitutionally valid evidence. *See* Moody's Memorandum of Law, at page 4, ¶ 21

13.    He was denied the effective assistance of counsel by all of his attorneys because none of them consulted with him on important decisions or kept him informed of important developments during the course of his prosecution. *See* Moody's Memorandum of Law, at page 4, ¶ 19.

14.    His sentencing counsel was ineffective for failing to request a downward departure under U.S.S.G. § 5K2.13 on the grounds of diminished capacity. *See* Moody's Memorandum of Law, at page 4, ¶ 21.

As demonstrated below, counsel's performance was not deficient with respect to any of these claims of ineffective assistance of counsel. Moody has also wholly failed to meet his burden of demonstrating prejudice.

    **1.**     **The *Strickland* Test For Ineffective Assistance Of Counsel Claims**

To succeed on a claim of ineffective assistance of counsel, a petitioner must prove both that his counsel's performance was deficient and that that deficient performance prejudiced his case. *Strickland v. Washington,* 466 U.S. 668, 694 (1984); *see also Rompilla v. Beard*, 545 U.S.

374, 380 (2005) ("Ineffective assistance under *Strickland* is deficient performance by counsel resulting in prejudice."). More specifically, Moody must show that: "(1) counsel's performance was deficient because it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense." *Stewart v. Sec'y, Dep't. Of Corr.*, 476 F.3d 1193, 1209 (11th Cir. 2007).

In reviewing counsel's performance to determine whether it meets constitutional requirements, a reviewing court must engage in a " 'highly deferential' review of counsel's performance and 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.' " *Jennings v. McDonough*, 490 F.3d 1230, 1243 (11th Cir. 2007), *citing Strickland v. Washington*, 466 U.S. at 689. "As a result of this presumption, a petitioner must show that no competent counsel would have taken the action that his counsel did take," and where the record is incomplete or unclear about why counsel acted as he did, the reviewing court must "presume that he did what he should have done, and that he exercised reasonable professional judgment." *Jennings v. McDonough*, 490 F.3d at 1243 (internal quotation marks and citations omitted).

The standard for judging counsel's performance is "reasonableness under prevailing professional norms." *Stewart v. Sec'y, Dep't. of Corr.*, 476 F.3d at 1209 (internal quotation marks and citations omitted); *see also Rompilla v. Beard*, 545 U.S. at 380. Moreover, the test for whether counsel's actions or inactions were reasonable "is not whether counsel could have done something different; instead, [the court] must consider whether the performance fell within the broad range of reasonable assistance... ." *Id*. "The burden of persuasion is on the petitioner to

prove by a preponderance of the evidence that counsel's performance was unreasonable." *Id.*

The Eleventh Circuit has described a petitioner's burden with regard to the deficient performance prong of an ineffective assistance of counsel claim as follows:

> Because there is such a wide range of constitutionally acceptable performance, a petitioner seeking to rebut the presumption of adequate performance must bear a heavy burden:
>
> > The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. ... We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.
>
> ... Thus, in order to show that counsel's performance was unreasonable, the petitioner must establish that *no competent counsel would have taken the action that his counsel did take....*

*Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (internal citations omitted); *accord Grossman v. McDonough*, 466 F.3d 1325, 1345 (11th Cir. 2006).

To succeed on an ineffective assistance of counsel claim, the petitioner must not only show deficient performance, but must also show that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. *See Jennings v. McDonough*, 490 F.3d at 1243. The Eleventh Circuit has described a petitioner's burden in demonstrating that his counsel's deficient performance prejudiced his case as also "high," noting that it is not enough to show that any errors had some conceivable effect on the outcome of the proceeding. *See Stewart v. Sec'y, Dep't. of Corr.*, 476 F.3d at 1209; *Robinson v. Moore*, 300 F.3d 1320, 1343-44 (11th Cir. 2002).

Finally, as the Eleventh Circuit has noted, "[i]t is well established that a habeas petitioner

must demonstrate both deficient performance and prejudice, and that a failure to demonstrate either prong constitutes a failure to demonstrate ineffective assistance of counsel." *Bottoson v. Moore*, 234 F.3d 526, 532 (11th Cir. 2000); *accord, Robinson v. Moore*, 300 F.3d at 1343. The reviewing court "can evaluate either the prejudice or the performance prong first and, if either one cannot be met, [the petitioner's] claim must fail." *Dingle v. Sec'y for Dep't. of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007).

> **2.    Claim That Moody Was Denied The Effective Assistance Of Counsel When Four Attorneys Were Appointed To Represent Him And Each Withdrew In Turn Without Cause (Claim 1 – Ground One of the motion, at pages 5 and 5.1-5.3, ¶¶ 1-25; Moody's Memorandum of Law, at page 1, ¶¶ 1-7)**

In his first claim on ineffective assistance of counsel, Moody argues that he was denied the effective assistance of counsel when four different attorneys were appointed to represent him and each withdrew. He does not argue any prejudice occurred as a result of the change in counsel; instead, he argues that the repeated change in counsel, without cause, was presumptively prejudicial.

As noted above, generally, a petitioner must prove he was prejudiced by the deficient performance of counsel to establish an ineffective assistance of counsel claim. *See Conklin v. Schofield*, 366 F.3d 1191, 1201 (11th Cir. 2004). "However, prejudice need not be shown in certain limited situations." *Id.* In *United States v. Cronic*, 466 U.S. 648, 658-62, 104 S. Ct. 2039, 2046-48 (1984), the Supreme Court recognized certain exceptions to the proof of prejudice requirement. Those exceptions include: (1) actual denial of the assistance of counsel altogether at a critical stage of the proceedings; (2) constructive denial of counsel at a critical stage of the proceedings consisting of counsel's entire failure "to subject the prosecution's case to

meaningful adversarial testing"; (3) certain types of state or government interference with counsel's assistance, such as denying appointed counsel funds for a needed expert; and (4) where counsel is burdened by conflicting interests arising from multiple representation situations. *See United States v. Cronic*, 466 U.S. at 658-62, 104 S. Ct. at 2046-48; *Lawhorn v. Allen*, No. 04-11711, 2008 WL 638596, at * 5 (11th Cir. Mar. 11, 2008); *Purvis v. Crosby*, 451 F.3d 734, 740-41 (11th Cir. 2006); *Conklin v. Schofield*, 366 F.3d at 1201. Moody's ineffective assistance of counsel claim predicated on the appointment and withdrawal of four different counsel during the proceedings leading up to his guilty plea, his guilty plea, and sentencing, does not involve any of the four recognized exceptions to the *Strickland* prejudice requirement. He was not denied counsel altogether at any critical stage of the proceedings, nor was he constructively denied counsel by counsel's complete failure to subject the prosecution's case to meaningful adversarial testing. Nor did the government or the Court interfere with his right to counsel. And there is no indication in the record, or allegation by Moody, that counsel were burdened by conflicting interests. Therefore, contrary to Moody's argument, he is required to prove prejudice as to this ineffective assistance of counsel claim. And because he has failed to demonstrate prejudice, his argument must fail.

Moody has not shown this Court that he was prejudiced in any way by the appointment and withdrawal of the four different attorneys. Each attorney asked the Court for permission to withdraw from his/her representation of Moody based on legitimate grounds, and the Court granted those motions, finding in each instance that there was good cause for the removals. The first two attorneys, Ms. Konrad and Ms. Freeman, asked to withdraw due to conflicts of interest between the interests of Moody and former clients. *See* GX B, at 1, ¶ 3 and GX C, at 1, ¶ 3. The

third attorney, Mr. Maddox, had health concerns that would prevent him from going to trial within the timeframe set by the Court.  *See* GX E, at 1, ¶ 1-2.  And the fourth attorney, Ms. Prince, asked to withdraw after the guilty plea proceeding was completed and before sentencing, and she asked to withdraw due to her move from Alabama to the State of Maine.  *See* GX R, at 1, ¶ 2.  Moreover, with three of the four attorneys, counsel for Moody found substitute counsel willing to represent Moody before asking to withdraw.  *See* GX B, at 1, ¶ 4; GX C, at 1, ¶ 4; GX R, at 1, ¶ 3.  Counsel representing Moody simply were not deficient in their performance with regard to their requests to withdraw from their representation, and in fact, each acted reasonably under the circumstances presented to them.

Further, Moody has pointed to nothing in the record to indicate how he was prejudicially affected by these changes in counsel, as he is required to do.  Because he has neither identified nor proven any prejudice, this ineffective assistance of counsel claim should be rejected.

**3.    Claim That Counsel Were Ineffective For Failing To Explain To Moody His Speedy Trial Rights So He Could Make An Informed Waiver Of Those Rights (Claim 3 – Ground One of the motion, at pages 5.3-5.4, ¶ 27; Moody's Memorandum of Law, at page 4, ¶ 21)**

Next, Moody argues that his counsel were ineffective in that none of them explained to him his speedy trial rights so that he could make an informed decision to waive those rights. While none of the attorneys addressed this allegation of Moody's in their affidavits, the allegation is refuted by the record before this Court.

Along with his motion to continue the trial date (Doc. 31), Mr. Maddox, Moody's third attorney, filed a Waiver Of Speedy Trial By Defendant, *see* GX D.  In that waiver, which is signed not only by counsel for Moody, but by Moody personally, Moody represented to the Court

that he was making "this waiver having conferred fully with counsel, and with the undersigned counsel's concurrence. Defendant further makes this Waiver with the understanding that such a continuance may cause a delay of several months in his trial." *Id*. Ms. Prince, Moody's fourth attorney, also filed a Waiver Of Speedy Trial Act Rights, the day after she filed an Unopposed Motion To Continue Trial, which was personally signed by Moody, as well as by Ms. Prince. *See* GX H. In that waiver, Moody certified to the Court that he was "waiving [his speedy trial] rights knowingly, voluntarily and intelligently after receiving a full and competent explanation of my rights given to me by my attorney." *Id*. Therefore, contrary to Moody's current assertions, he was fully advised of his speedy trial rights and he made an informed decision to waive those rights. His counsels' performance simply was not deficient because they did fully advise Moody of his speedy trial rights.

Additionally, Moody has not demonstrated any prejudice with regard to this claim. He has not shown that but for counsels' failure to advise him of his speedy trial rights, he would not have been convicted and sentenced as he was. Moody must demonstrate prejudice to succeed on a claim of ineffective assistance of counsel. He has failed to meet that requirement. Therefore, this claim of ineffective assistance of counsel should be rejected.

      **4.**      **Claim That Counsel Were Ineffective For Failing To Request A Competency Hearing To Determine His Competency At The Time Of The Offense And To Present Evidence Of Diminished Capacity At Sentencing In Mitigation (Claim 5 – Ground Two of the motion, at pages 5.5-5.6, ¶¶ 2-11; Moody's Memorandum of Law, at pages 2-3, ¶¶ 12-13)**

In his next claim for relief, Moody argues that his counsel were ineffective because they had information regarding his mental problems and being under a psychiatrist's care, but they did

not request a competency hearing to determine his competency at the time of the offense or at sentencing. He argues he was prejudiced by these failures because he at the least would have received a sentence at the low end of the Sentencing Guidelines range if they had presented this evidence to the Court for its consideration and it would have provided him a viable defense, if he had proceeded to trial. Moody has not presented this Court with any evidence that he was incompetent at the time of the offense in this case, incompetent to stand trial, incompetent at the time he was sentenced, or that he suffered from a mental illness sufficient to entitle him to a downward departure under U.S.S.G. § 5K2.13 based on diminished capacity. Instead, all Moody presents to this Court for consideration are assertions that he had at some time been under a psychiatrist's care and had taken psychotropic medicine. Counsel were not deficient in their representation of Moody with respect to this claim, and Moody has not demonstrated prejudice.

First, Moody has not shown that any of his counsel were deficient in their representation of him as it relates to his competency at the time of the offense, guilty plea, or sentencing. First, as to Ms. Konrad and Ms. Freeman, the first two attorneys appointed to represent Moody, they represented Moody less than two weeks before they discovered conflicts in their representation of Moody and withdrew. These counsel were presumed to have rendered competent assistance during that short time they represented Moody, and he has not demonstrated to the contrary by simply alleging that they should have done more during their brief representation of him to discover that he was under the care of a psychiatrist and on psychotropic medicine at some unidentified time in his life. Moreover, even if they had discovered these facts, counsel would not have been remiss in determining that those facts alone were not sufficient facts on which to base a motion for a competency hearing. Generally, much more is required to establish a bona

fide doubt as to a defendant's competency.

Moreover, as to Moody's third and fourth attorneys, Mr. Maddox and Ms. Prince, as was thoroughly addressed in part III.C. 3., above, neither one of them had any evidence from Moody, or otherwise, to indicate he could not understand the proceedings against him or participate in his defense. To the contrary, Mr. Maddox represented in his affidavit: "During my interview with Mr. Moody at the jail, he told me that he had mental problems that could be documented. I frankly believed that his insight into defenses based upon his mental condition was such that he was competent and, in fact, manipulative of the judicial system." *See* Affidavit of Bruce Maddox, at 2, ¶ 2. And Ms. Prince represented in her affidavit: "Affiant's observations made during her discussions with [Moody] did not lead her to believe that [Moody] was not competent as he understood various motions, had definite ideas about what he wanted, and discussed at length the suppression issue that had been filed. [Moody] did not display any indicia of mental incapacity that would impact his competency or his ability to understand the legal proceedings or participate in his legal defense and make decisions concerning his case." *See* Affidavit of Maryanne M. Prince, at 3, ¶ 12. Because these attorneys had no reason to doubt Moody's competency to stand trial or plead guilty, their performance was not deficient based on the fact they did not explore the issue further.

Finally, as to Moody's competency at the time of his sentencing, counsel for Moody at sentencing, Mr. Poti, represented in his affidavit: "At no time during my representation of Moody did I feel that he was not competent to understand the nature of the proceedings against him, or to participate in his defense and decision making process. Indeed, we had discussed at length the violent crime enhancement mentioned earlier." *See* Affidavit of John M. Poti, at 3.

34

He also stated: "At no time did Moody inform me that he was currently under the care of a psychiatrist and prescribed psychotropic medications." *Id*. at 2. In fact, Moody does not *now* claim that he was under the care of a psychiatrist at the time of sentencing or on psychotropic medication. He only claims that he was under the care of a psychiatrist at some unidentified time in the past and that he was on some unidentified psychotropic medicine in the past. But even if he had been on such medication and receiving such care, those facts alone would not establish that Moody was incompetent at the time of sentencing. Instead, to succeed on a claim of incompetency at sentencing, Moody would have to establish that he could not understand the proceedings against him or assist in his defense. He has not done so, nor even attempted to do so. Therefore, he has not demonstrated his counsel's performance was deficient in any way.

Moody has also failed to demonstrate the necessary prejudice as to his competency to stand trial or plead guilty, and at the time of sentencing ineffective assistance of counsel claims. As to each of those stages of the proceedings against him, Moody has not presented this Court with any argument or evidence that he could not understand the proceedings against him or participate in his defense as a result of the administration of psychotropic medicine at some time in the past for some unnamed mental disturbance. The burden to demonstrate prejudice is on Moody, and he has wholly failed in that burden.

Moreover, as to Moody's competency at the time of the offense ineffective assistance of counsel claim, Moody has failed to present this Court with any allegation or evidence that, at the time of the commission of the acts constituting the offense in his case, he, "as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts." *See* 18 U.S.C. § 17. Again, he has merely stated that he was under the care of a

psychiatrist at some unidentified time in his past and had been prescribed psychotropic medicine. Even if these facts were true, they would not establish Moody had a severe mental disease or defect, or that he could not appreciate the wrongfulness of his acts as a result. "Mental disease or defect does not otherwise constitute a defense." *Id*. Therefore, Moody cannot demonstrate he was prejudiced from any failure of counsel as to this claim, and that claim must be rejected.

Finally, Moody alleges his sentencing counsel was ineffective for failing to argue at sentencing for a downward departure based on his diminished capacity at the time of the offense under U.S.S.G. § 5K2.13. Again, in support of this argument, Moody only relies on his allegation that at some unnamed time he had seen a psychiatrist and was on psychotropic medicine. He does not claim he was on such medicine or under such care at the time of the offense or at the time of sentencing. As to this claim, Moody has demonstrated neither deficient performance or prejudice.

In relevant part, U.S.S.G. § 5K2.13 provides:

A downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense. Similarly, if a departure is warranted under this policy statement, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.

The Application Note to this section states that " '[s]ignificantly reduced mental capacity' means the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." *See* U.S.S.G. § 5K2.13 n.1.

In his affidavit, Mr. Poti states that Moody never told him about being on psychotropic

medicine or about being under the care of a psychiatrist.  *See* Affidavit of John M. Poti, at 2.  He further states that "Moody did not exhibit a 'significant reduced mental capacity' as defined in the Guidelines, and a motion to such affect would have been frivolous.  Further, even if a § 5K2.13 motion had been made and granted, the Court was limited by the statutory minimum sentence in this matter," *id*. at 3, the sentence Moody in fact received – 180 months' imprisonment.  Because Moody never told Poti about previously having been under the care of a psychiatrist and prescribed psychotropic medicine, and because Moody did not exhibit any signs that he was suffering from a significantly reduced mental capacity that contributed to the commission of the offense, Poti was not ineffective in failing to file a downward departure motion.

Further, as to the downward departure motion, Moody has failed to demonstrate prejudice.  First, as noted by Mr. Poti, Moody failed to demonstrate prejudice because the sentencing court was constrained by statute to sentence Moody to no less than 180 months in prison, and that is the sentence Moody received.  Therefore, he cannot show that but for counsel's failure to file the downward departure motion, his sentence would likely have been different.  Second, because Moody has not argued – or presented any evidence at all – of a reduced mental capacity at the time of his offense that contributed to the commission of the offense, he has not shown he would have received a lesser sentence if counsel had filed the motion.  He simply has not demonstrated he was prejudiced by counsel's failure to file the motion.

Moody has not demonstrated deficient performance or prejudice with respect to any of his competency or mental capacity claims of ineffective assistance of counsel.  He is therefore not

entitled to relief on any of those claims.

5.    **Claim That Counsel Was Ineffective At Sentencing Because He Allowed The Prosecutor To Use His Nonviolent Third Degree Burglary Conviction To Enhance His Sentence Under The Armed Career Criminal Act (Claim 7 – Ground Two of the motion, at pages 5 and 5.4, ¶¶ 1-5; Moody's Memorandum of Law, at pages 4-6, ¶¶ 1-11)**

Moody argues that his sentencing counsel was ineffective because he allowed the prosecutor to use his nonviolent third degree burglary conviction to enhance his sentence under the Armed Career Criminal Act. But contrary to Moody's assertion, his sentencing counsel did not allow the prosecutor to use the conviction. Instead, he vigorously argued at sentencing and on appeal that Moody's prior conviction was not a qualifying offense for purposes of the Armed Career Criminal Act. *See* GX S at 2-12; GX U. Counsel simply lost his argument in the sentencing and appellate courts. *See* GX S at 4-12; GX V. His performance was not deficient, and Moody has not asserted any way in which it was. Further, Moody was not prejudiced, because the prior conviction was properly used as a qualifying offense under the Armed Career Criminal Act. *See* GX V. Therefore, this Court should reject this claim of ineffective assistance of counsel.

6.    **Claim That Counsel Was Ineffective At Sentencing Because Counsel Was In Possession Of Material Confirmed By The Probation Officer In The Presentence Investigation Report That Moody Was Seeing A Psychiatrist At The Time Of The Offense, But Counsel Did Not Use That Information To Ask For A Reduction In Moody's Sentence (Claim 8 – Ground Three of the motion, at pages 5 and 5.5-5.6, ¶¶ 1-11)**

The next claim of ineffective assistance of counsel raised by Moody is that his sentencing counsel was ineffective because he was in possession of material confirmed by the probation officer in the presentence investigation report that Moody was seeing a psychiatrist at the time of

the offense, but counsel did not use that information to ask for a reduction in Moody's sentence.

The presentence report in this case did state as follows with respect to Moody's mental and

emotional health:

> 61.    The defendant reported he sought the professional assistance of Dr.
> Williamson in Opp, Alabama.  We contacted the office of Dr. Windell
> Williamson who informed he provided individual therapy sessions for the
> defendant.

> 62.    In addition, Defendant Moody stated he participated in various counseling
> classes during his incarceration at Bullock Correctional Center.  We
> received information from the Alabama Department of Corrections that
> the defendant underwent a psychiatric assessment in 1983, however, there
> were no conclusions included in the information.

(Doc. 83, under seal)  Tellingly, this report did *not*, as Moody argues, state that Moody was under

the care of a psychiatrist *at the time of the offense* in this case.  The report does not identify Dr.

Williamson as a psychiatrist, and Moody did not commit this offense while in the Bullock

Correctional Center, regardless of whether he was seen by a psychiatrist while there.  Moreover,

the report does not state the reasons Moody was seeing Dr. Windell or the nature of his

complaints.  Further, Moody does not tell this Court exactly what information – in what form or

the content – Mr. Poti allegedly had in his possession that supported a claim that he was under

the care of a psychiatrist at the time of the offense in this case.  Because he has failed in all these

regards, he has failed to demonstrate what information counsel had that he should have used to

support a diminished capacity downward departure, and he has failed to demonstrate that counsel

did not perform competently.

Further, as noted before, in part III.D.4, above, Moody has failed to demonstrate prejudice

for two reasons.  First, because the sentencing court was constrained by statute to sentence

39

Moody to no less than 180 months in prison, and that is the sentence Moody received, Moody cannot demonstrate that, but for counsel's failure to pursue and file the motion, his sentence would have been different. Second, because Moody has not argued – or presented any evidence at all – of a reduced mental capacity at the time of his offense that contributed to the commission of the offense, see U.S.S.G. § 5K2.13, he has not shown he would have received a lesser sentence if counsel had filed the motion. He simply has not demonstrated he was prejudiced by counsel's failure to use some unidentified information in his possession. Moody is entitled to no relief on this claim.

### 7. Claim That Counsel, Ms. Prince, Was Ineffective Because She Refused To Reply By Letter Or Phone To Moody's Inquiries Or To His Attempts To Contact Her (Claim 9 – Moody's Memorandum of Law, at page 2, ¶¶ 8-9)

Moody also complains that his counsel, Ms. Prince, was ineffective because she refused to reply by letter or phone to his inquiries or to his attempts to contact her. In support of his claim, Moody refers to a letter he wrote to the Court shortly after Ms. Prince was appointed to represent him, in which he complained about her failures to respond to his attempts to contact her. *See* GX I. He does not present any other argument that Ms. Prince or any of his other counsel failed to respond to his inquiries or attempts to contact them.

The record reflects that, after Moody wrote to the Court, in a letter dated February 25, 2006, complaining about the representation he was receiving at that point, the Court ordered counsel for Moody, Ms. Prince, to respond to the complaints. (Doc. 44) Ms. Prince responded as ordered, *see* GX J, informing the Court that she had met with Moody for over 75 minutes to discuss the merits of his case, possible motions, and the general status concerning his health. *Id.*

at 1, ¶ 1.  She also specifically addressed Moody's complaints that he wanted her to file a motion to have him released from custody and their discussions about his health problems.  *Id*. at 1, ¶¶ 2-3.  Moody did not further complain to the Court about the assistance he was receiving from Ms. Prince and, at the change of plea hearing, he assured the Court that he was "fully satisfied with the counsel, representation and advice given to [him] in this case by his attorney, Miss Prince." *See* GX Q at 6.  In her affidavit, Ms. Prince, represents that she did not recall any other complaints or communications after the issues raised by Moody in his letter to the Court.  *See* Affidavit of Maryanne M. Prince, at 2, ¶ 5.

The record reflects that Ms. Prince's response to Moody's complaints were immediate and reasonable.  She also provided a reasonable explanation as to why she had not yet met with Moody at the time of his complaint to the Court – she had not yet received the file in the case from previous counsel or had a chance to review it.  *Id*.  Her performance was therefore not deficient.

Further, Moody has not shown any prejudice to his case.  Prejudice must be affirmatively established by Moody, and he has wholly failed to meet his burden in this respect.  This claim of ineffective assistance of counsel should be rejected.

8.    **Claim That Sentencing Counsel Was Ineffective For Failing To Object To The Failure Of The Prosecution To Prove His Prior Convictions With Constitutionally Valid Evidence (Claim 11 – Moody's Memorandum of Law, at page 4, ¶ 21)**

Moody's next claim of ineffective assistance of counsel is that his sentencing counsel was ineffective for failing to object to the failure of the prosecution to prove his prior convictions with constitutionally valid evidence.  Moody does not specifically identify in what manner the

prior convictions were subject to constitutional attack, and the record does not reflect that counsel should have objected to the convictions on constitutional grounds.  Where, as here, the record is incomplete or unclear about why counsel acted as he did, counsel is presumed to have done what he should have done.  *See Jennings v. McDonough*, 490 F.3d at 1243.  Because Moody has not demonstrated counsel's performance was deficient in regard to the prior convictions, this Court should reject Moody's ineffective assistance of counsel claim with regard to those prior convictions.

Moody has also failed to demonstrate prejudice with regard to this claim for relief, because he has failed to demonstrate that the prior convictions were, in fact, unconstitutionally obtained.  Because Moody has also failed to demonstrate prejudice, this claim of ineffective assistance of counsel should be rejected on that ground as well.

9.    **The Claim That All Of Moody's Counsel Were Ineffective Because None Of Them Consulted With Him On Important Decisions Or Kept Him Informed Of Important Developments During The Course Of His Prosecution (Claim 13 – Moody's Memorandum of Law, at page 4, ¶ 19)**

"An attorney undoubtedly has a duty to consult with the client regarding 'important decisions,' including questions of overarching defense strategy," but he is not required to consult and obtain the defendant's consent to every tactical decision made during the course of the representation.  *See Florida v. Nixon*, 543 U.S. 175, 187, 125 S. Ct. 551, 560 (2004).  Without identifying on what matters he was not consulted or of what important decisions he was not informed, Moody alleges that all his counsel were ineffective for failing to consult with him and keep him informed.  It is Moody's burden to both plead deficient performance with enough specifics to determine if counsel was performing as the Constitution demands and to demonstrate

prejudice. He has failed in both respects with regard to this claim.

Based on the affidavits provided to this Court by three of Moody's attorneys, it appears that each of those attorneys met with Moody, consulted with him on tactical and strategic matters, and informed him of the decisions that were being made. Mr. Maddox represented in his affidavit that, during the brief period he represented Moody, he met with Moody at the jail and discussed mental health issues with him, and did some follow-up on that issue with Moody's wife. *See* Affidavit of Bruce Maddox, at 2, ¶ 2. Ms. Prince represented in her affidavit that she met with Moody on several occasions and discussed matters concerning his health and his case, including discussing his motion to suppress with him. *See* Affidavit of Maryanne M. Prince, at 2, ¶¶ 5, 7. She also met with Moody and law enforcement "for a lengthy period of time to discuss possible plea reduction and assistance with law enforcement in an effort to reduce his sentence due to his status as a career offender." *Id*. at 2, ¶ 5. Ms. Prince also represented in her response to the Court's order concerning Moody's complaints about her representation, that, when she met with Moody, she "discussed the merits of his case, possible motions and the general status issues regarding his health," with him. *See* GX J, at 1, ¶ 1. Finally, in his affidavit, Mr. Poti, represents that he and Moody discussed Moody's physical ailments with regard to mitigation at sentencing and that they discussed "at length" the violent crime enhancement under the Armed Career Criminal Act. *See* Affidavit of John M. Poti, at 2-3. Based on these affidavits, and the presumption that counsel did what they should have done, this Court should conclude that Moody's counsel did not perform deficiently with respect to this claim.

And again, Moody has not demonstrated how any failures on counsels' part resulted in

prejudice to his case.  Because he has failed to demonstrate prejudice, this claim of ineffective assistance should be rejected.

> **10.    Claim That Sentencing Counsel Was Ineffective For Failing To Request A Downward Departure Under U.S.S.G. § 5K2.13 On The Grounds Of Moody's Diminished Capacity (Claim 14 – Moody's Memorandum of Law, at page 4, ¶ 21)**

Moody's final claim of ineffective assistance of counsel is that his sentencing counsel was ineffective for failing to request a downward departure under U.S.S.G. § 5K2.13 on the grounds of Moody's diminished capacity.  This claim was fully addressed in part III.D.4, of this response, above.  Briefly, counsel was not ineffective because there is no evidence that Moody's mental capacity was significantly reduced at the time of the offense in this case or that that significantly reduced mental capacity contributed to the commission of Moody's offense. Therefore, counsel was not deficient in failing to ask for a departure on those grounds, and Moody was not prejudiced as a result of any failure on counsel's part.  Because there was no deficient performance with regard to this claim, or prejudice, this final claim of ineffective assistance of counsel should be rejected.

## IV.  MISCELLANEOUS

Moody has failed to plead facts or present sufficient evidence or argument demonstrating that he is entitled to an evidentiary hearing, and his claims for relief should be denied without such a hearing.  *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see also Gordon v. United States*, 496 F.3d 1270, 1281 (11th Cir. 2007) ("An evidentiary hearing is not required when 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.' "), *citing* 28 U.S.C. § 2255.; *Chandler v. McDonough*, 471 F.3d 1360, 1363 (11th Cir.

2006) (Where a defendant fails to proffer any evidence that he would seek to introduce at a

hearing, he is not entitled to an evidentiary hearing).  Should this Court determine that Moody

has made any arguments not addressed in this response, the Government would request the

opportunity to further respond to those arguments.

Any facts not specifically admitted in this response are denied, and the arguments made

as to each claim raised are asserted in the alternative.

## V.  CONCLUSION

For the above reasons, Petitioner Mickey Lee Moody has failed to demonstrate that he is

entitled to any relief from this Court, and his § 2255 motion should be denied without an

evidentiary hearing.

Respectfully submitted this 28th day of March, 2008.

LEURA G. CANARY
UNITED STATES ATTORNEY


/s/  Sandra J. Stewart
SANDRA J. STEWART
Assistant United States Attorney
131 Clayton Street
Montgomery, AL  36101-0197
(334) 551-1764
(334) 223-7135

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

|  |  |  |
|---|---|---|
| **MICKEY LEE MOODY,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1:08cv63-MHT** |
| | ) | **(CR No. 1:05-cr-0195-LSC-SRW)** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2008, I electronically filed the foregoing response and attachments with the Clerk of the Court using the CM/ECF system and mailed, postage prepaid, a copy of this response to the *pro se* Defendant/Petitioner as follows:

Mickey Lee Moody
Rg. #09427-002
FCI Atlanta-Medium
P. O. Box 150160
Atlanta, GA  30315-0160

Respectfully submitted,

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/  Sandra J. Stewart
SANDRA J. STEWART
Assistant United States Attorney
131 Clayton Street
Montgomery, AL  36101-0197
(334) 551-1764
(334) 223-7135

GOVERNMENT
EXHIBIT

CASE
NO.

EXHIBIT
NO.   A

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

**FILED**

SEP - 8 2005

CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 1:05CR195-T |
| | ) | [18 USC 922(g)(1)] |
| MICKEY LEE MOODY | ) | |
| | ) | <u>INDICTMENT</u> |

The Grand Jury charges:

### COUNT 1

That on or about March 28, 2005, in Geneva County, within the Middle District of Alabama,

### MICKEY LEE MOODY,

defendant herein, having been convicted on August 21, 2001, in the Circuit Court of Covington

County, Alabama, under Case Number CC-2001-124 of two counts of Unlawful Possession of a

Controlled Substance, both crimes punishable by imprisonment for a term exceeding one year under

the laws of the State of Alabama, knowingly did possess, in and affecting commerce, a firearm and

ammunition, that is: a Davis Industries, Model D-32, .32 semi-automatic pistol, serial number

100873, all in violation of Title 18, United States Code, Section 922(g)(1).

### FORFEITURE ALLEGATION

A.    Count 1 of this indictment is hereby repeated and incorporated herein by reference.

B.    Upon conviction for the violation of Title 18, United States Code, Section 922(g)(1),

as alleged in Count 1 of this indictment, the defendant,

### MICKEY LEE MOODY,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924, and Title 28,

United States Code, Section 2461(c), the firearm and ammunition involved in the commission of this

offense, including but not limited to the following:

   1 - a Davis Industries, Model D-32, .32 semi-automatic pistol, serial number 100873.

  C. If any of the property described in this forfeiture allegation, as a result of any act or omission of the defendant

   (1) cannot be located upon the exercise of due diligence;

   (2) has been transferred, sold to, or deposited with a third person;

   (3) has been placed beyond the jurisdiction of the court;

   (4) has been substantially diminished in value; or,

   (5) has been commingled with other property which cannot be divided without

difficulty; the court shall pursuant to Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c), order the forfeiture of any other property of the defendant up to the value of any property described in paragraph B above. All in violation of Title 18, United States Code, Sections 922(g) and 924(d).

A TRUE BILL:

_____
Foreperson

_____
LEURA GARRETT CANARY
United States Attorney

_____
LOUIS V. FRANKLIN, SR.
Assistant United States Attorney

2

## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | **CASE NO: 1:05-CR-195-T** |
| | ) | |
| MICKEY LEE MOODY | ) | |

### MOTION TO WITHDRAW AS COUNSEL

**COMES NOW** the undersigned counsel, Robin C. Konrad, and hereby moves this Honorable Court for an Order granting her motion to withdraw from representation of the defendant Mickey Lee Moody. In support of this motion, undersigned counsel would show:

1.      On November 22, 2005, the Federal Defender was appointed to represent Mr. Moody in the above-styled cause.

2.      Undersigned counsel filed a Notice of Appearance on November 30, 2005.

3.      On December 8, 2005, undersigned counsel discovered that a conflict exists between the interests of Mr. Moody and the interests of former clients that requires counsel to withdraw from further representation of Mr. Moody.

4.      Undersigned counsel requests that, on behalf of Mr. Moody, CJA panel attorney Bruce Maddox be appointed to represent him in all further proceedings in this case. Mr. Moody will not be prejudiced by such a change in counsel at this time. Mr. Maddox has agreed to accept CJA appointment, if the Court so rules.



AO388-C
GOVERNMENT
EXHIBIT

CASE
NO.

EXHIBIT
NO. B

.

      **WHEREFORE,** premises considered, undersigned counsel hereby prays that her motion to

withdraw as counsel for Mr. Moody in the above-styled cause be granted and an Order issued

permitting her withdrawal and appointing Bruce Maddox to represent Mr. Moody in all further

proceedings in this case.

                         Respectfully submitted,

                         **s/Robin C. Konrad**
                         **ROBIN C. KONRAD**
                         **DC BAR NO.: 484125**
                         Attorney for Defendant
                         Federal Defenders
                         Middle District of Alabama
                         201 Monroe Street , Suite 407
                         Montgomery, AL 36104
                         TEL:   (334) 834-2099
                         FAX:   (334) 834-0353
                         E-Mail: Robin_Konrad@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2005, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system which will send notification of such filing to the following:

Karl David Cooke, Esq., Assistant U.S. Attorney, One Court Square, Suite 201, Montgomery,

Alabama 36104.

Respectfully submitted,

**s/Robin C. Konrad**
**ROBIN C. KONRAD**
**DC BAR NO.: 484125**
Attorney for Defendant
Federal Defenders
Middle District of Alabama
201 Monroe Street , Suite 407
Montgomery, AL 36104
TEL:  (334) 834-2099
FAX:  (334) 834-0353
E-Mail: Robin_Konrad@fd.org

## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| V. | )    CASE NO: 1:05-CR-195-T |
| | ) |
| MICKEY LEE MOODY | ) |

### MOTION TO WITHDRAW AS COUNSEL

COMES NOW the undersigned counsel, Christine A. Freeman, and hereby moves this Honorable Court for an Order granting her motion to withdraw from representation of the defendant Mickey Lee Moody. In support of this motion, undersigned counsel would show:

1. On November 22, 2005, the Federal Defender was appointed to represent Mr. Moody in the above-styled cause.

2. Undersigned counsel filed a Notice of Appearance on December 7, 2005.

3. On December 8, 2005, undersigned counsel discovered that a conflict exists between the interests of Mr. Moody and the interests of former clients that requires counsel to withdraw from further representation of Mr. Moody.

4. Undersigned counsel requests that, on behalf of Mr. Moody, CJA panel attorney Bruce Maddox be appointed to represent him in all further proceedings in this case. Mr. Moody will not be prejudiced by such a change in counsel at this time. Mr. Maddox has agreed to accept CJA appointment, if the Court so rules.



AO988-C
**GOVERNMENT EXHIBIT**

CASE
NO.

EXHIBIT
NO.    C

**WHEREFORE**, premises considered, undersigned counsel hereby prays that her motion to withdraw as counsel for Mr. Moody in the above-styled cause be granted and an Order issued permitting her withdrawal and appointing Bruce Maddox to represent Mr. Moody in all further proceedings in this case.

Respectfully submitted,

**s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Defendant
Federal Defenders
Middle District of Alabama
201 Monroe Street , Suite 407
Montgomery, AL 36104
TEL:   (334) 834-2099
FAX:   (334) 834-0353
E-Mail: Christine_Freeman@fd.org

### CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2005, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system which will send notification of such filing to the following:

Karl David Cooke, Esq., Assistant U.S. Attorney, One Court Square, Suite 201, Montgomery,

Alabama 36104.


Respectfully submitted,


**s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Defendant
Federal Defenders
Middle District of Alabama
201 Monroe Street , Suite 407
Montgomery, AL 36104
TEL:   (334) 834-2099
FAX:   (334) 834-0353
E-Mail: Christine_Freeman@fd.org

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

UNITED STATES OF AMERICA,    2006 JAN -3 P 4: 22

      Plaintiff,              *

V.                       *     CASE NO. 1:05-CR-195

                       *

MICKEY LEE MOODY,      *

                       *

      Defendant.        *

## WAIVER OF SPEEDY TRIAL BY DEFENDANT

      Comes now Defendant Mickey Lee Moody, with counsel, and in support of his Motion to

Continue, waives the right to speedy trial granted by 18 U. S. Code 3161 stating the grounds

stated in his aforesaid Motion to Continue and the interests of justice outweigh the interests of

himself and the government in the right to speedy trial granted by said 18 U. S. Cod 3161.

Defendant makes this waiver having conferred fully with counsel, and with the undersigned

counsel's concurrence. Defendant further makes this Waiver with the understanding that such a

continuance may cause a delay of several months in his trial.

      Respectfully submitted this the ___3rd___ day of ___January___, 2006.


_____
Mickey Lee Moody, Defendant


_____
Bruce Maddox (MAD013)
Attorney for Mickey Lee Moody



AO086-C
**GOVERNMENT
EXHIBIT**

CASE
NO.

EXHIBIT
NO.  D

## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| V. | * | CASE NO. 1:05-CR-195 |
| | * | |
| MICKEY LEE MOODY, | * | |
| | * | |
| Defendant. | * | |

### MOTION TO WITHDRAW

Come now undersigned Counsel and moves the Court to permit him to withdraw as

counsel for Defendant, Mickey Lee Moody, and as grounds therefor says as follows:

1.  That counsel for defendant has a spinal injury that requires a series of medical

    beginning on February, 7, 2006.

2.  As a result of said medications and procedures it would be impossible for counsel

    to prepare and try case.

3.  Counsel waives payment of fees earned up to this date.

Respectfully submitted this the 23rd day of January, 2006.


                                        S/Bruce Maddox
                                        Bruce Maddox (MAD013)
                                        Attorney for Mickey Lee Moody

Of Counsel:

Law Offices of Bruce Maddox
6728 Taylor Court
Montgomery, Alabama 36117
Phone: (334) 244-7333
Fax: (334) 260-9600



AO356-C
**GOVERNMENT
EXHIBIT**

CASE
NO.

EXHIBIT
NO.

### IN THE DISTRICT COURT OF THE UNITED STATES
### FOR THE MIDDLE DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **V.** | * | **CASE NO. 1:05-CR-195** |
| | * | |
| **MICKEY LEE MOODY,** | * | |
| | * | |
| **Defendant.** | * | |

### CERTIFICATE OF SERVICE

_____I hereby certify that on this 23rd day of January, 2006, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system which will send notification of such filing to

David Cook, Esquire, Asst. United States Attorney.

Respectfully submitted.

_____ S/Bruce Maddox
Bruce Maddox (MAD013)
Attorney for Mickey Lee Moody

Of Counsel:

Law Offices of Bruce Maddox
6728 Taylor Court
Montgomery, Alabama 36117
Phone: (334) 244-7333
Fax: (334) 260-9600

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 1:05cr195-LSC |
| | ) | WO |
| MICKEY LEE MOODY | ) | |

## ORDER ON MOTION

Upon consideration of defendant counsel's motion to withdraw (Doc. # 34), filed

January 23, 2006, and for good cause, it is

ORDERED that the motion be and hereby is GRANTED. Attorney Maryanne Prince

is appointed to represent defendant in this action.

DONE, this 26th day of January, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE



AO88-C
GOVERNMENT
EXHIBIT

CASE
NO.

EXHIBIT
NO.

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | CR. NO. 02:05-CR-195 |
| | ) | |
| | ) | |
| MICKEY LEE MOODY. | ) | |

### UNOPPOSED MOTION TO CONTINUE TRIAL

**COMES NOW** the Defendant, Mickey Lee Moody, by and through undersigned counsel,

Maryanne Prince, and moves this Court, pursuant to 18 U.S.C. § 3161(h)(8)(A) and the Sixth

Amendment to the Constitution of the United States, for a continuance of his trial setting of

February 13, 2006, to a later date. In support of this motion, Defendant would show the

following:

1.      On January 26, 2006, previous counsel for Mr. Moody, Bruce Maddox, withdrew

from representation due to health reasons, and the Court appointed current counsel to represent

Mr. Moody.

2.      Present counsel, has not yet received a copy of Mr. Moody's file from Mr.

Maddox, therefore she has not had an opportunity to review Mr. Moody's file, or meet with Mr.

Moody or talk to Mr. Maddox about the status of the case.

3.      Present counsel has spoken with the Assistant U. S. Attorney, Karl David Cooke,

Jr., and advised him that she will be filing a motion to continue the trial in this case in order to

allow her sufficient time to retrieve the file herself from Mr. Maddox, review the file and meet

with Mr. Moody.  AUSA Cooke advised he has no objection to a continuance in light of the



AO88-C
**GOVERNMENT
EXHIBIT**

CASE
NO.

EXHIBIT
NO.       G

short time and that he has been working with Mr. Moody toward resolution.

4.    In order to prepare for the trial of this case or work toward a plea agreement, Mr. Moody's newly appointed counsel will need adequate time to review the case file, and meet with Mr. Moody .  Mr. Moody requests that his case be continued until the next trial docket of the presiding Judge.

5.    Mr. Moody, pursuant to the Sixth Amendment to the United States Constitution is entitled to a fair trial, to the effective assistance of counsel and to compulsory process. Because there may be additional information, and as yet unidentified witnesses, which may be relevant to this case, Mr. Moody asserts that he will be unable to adequately prepare for trial or resolve this case by plea by February 13, 2006.

6.    Moreover, while, requests for a continuance are addressed to the sound discretion of the trial court, *United States v. Darby*, 744 F.2d 1508, 1521 (11 Cir. 1984), *reh'g denied* 749 F.2d th 733, *cert. denied*, 471 U.S. 1100 (1985), Mr. Morris feels that, in this case, the ends of justice will be served by allowing the defense adequate time to review all potentially relevant information and to interview all potential witnesses in order to adequately prepare a defense to the charges contained in the Indictment.

7.    The Government, through Assistant United States Attorney Karl David Cooke, Jr., has indicated that it does not oppose the granting of a continuance.

8.    Mr. Moody has no objection to the requested continuance and his speedy trial waiver will be filed with this Court.

**WHEREFORE**, Mr. Moody respectfully requests that this Motion be granted and that his trial be continued until the next available trial term.

.

Respectfully submitted this 6th day of February, 2006.

/s/ Maryanne M. Prince
MARYANNE M. PRINCE (MEL007)
Attorney for Defendant

ADDRESS OF COUNSEL:
ASB-6515-E39M
631 South. Perry Street
Montgomery, Alabama 36104
Phone: (334)-262-1006
FAX:   (334)-262-1066
maprince@knology.net

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing of this Waiver upon the following, by Electronic Mail Delivery CM/ECF or placing same in an addressed, postage prepaid envelope and deposited with the U.S. Post Office on this the 6th day of February, 2006.

Hon. Karl David Cooke, Jr., AUSA
U. S. Attorney's Office
P. O. Box 197
Montgomery, Alabama 36102-0197

/s/ Maryanne M. Prince
MARYANNE M. PRINCE (MEL007)
Attorney for Defendant

# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v | ) | CR. NO. 02:05-CR-195 |
| | ) | |
| | ) | |
| MICKEY LEE MOODY | ) | |

## WAIVER OF SPEEDY TRIAL ACT RIGHTS

The undersigned Mickey Lee Moody, states that he is the same Mickey Lee Moody charged

in Case No. 2:05-CR-195, I do hereby waive my rights to a speedy trial as established in 18 U.S.C.

§ 3161, et seq.  I certify to the court that I am waiving these rights knowingly, voluntarily and

intelligently after receiving a full and complete explanation of my rights given to me by my attorney.

Respectfully submitted _____ day of February, 2006.


_____
**Mickey Lee Moody**
Defendant


_____
MARY ANNE M. PRINCE (ASB-6515-E39M)
Attorney for Defendant


ADDRESS OF COUNSEL:
631 South. Perry Street
Montgomery, Alabama 36104
Phone: (334)-262-1006
FAX:  (334)-262-1066



AO886-C
**GOVERNMENT
EXHIBIT**

CASE
NO.

EXHIBIT
NO.  4

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing of this Waiver upon the following, by Electornic Mail Delivery CM/ECF or placing same in an addressed, postage prepaid envelope and deposited with the U.S. Post Office on the   day of February, 2006.

Hon. Karl David Cooke, Jr., AUSA
U. S. Attorney's Office
P. O. Box 197
Montgomery, Alabama 36102-0197

MARY ANNE M. PRINCE (MEL007)
Attorney for Defendant

1:05cr195-LSC

RECEIVED

2006 MAR -3 A 8:33

DEBRA (illegible) RT
U.S. DISTRICT
MIDDLE DIS       ALA

United States District Court
Middle District of Alabama

Comes Now Mickey Lee Moody before this
Honorable Court in Letter with Full Respect To the
Goverment and all Representives.

I have To step out in Faith and ask
This Honorable Court Humbly For Mercy.
Theres Much doubt I am Being Represented as I should
be. Until Today 2-25-06, I didn't have address For my
attorney, plus their phone has a block on it. For the Last
2 Weeks, I have been Very Sick From what possibly Could be
Cancer. Dr. Mendez here ordered a Referral To outside Dr.
For Biopsy Several weeks ago. Also upon Seeing my attorney
Mary Anne Prince, I Requested Several Times To her, To seek
Bail For me and present everything Need To Show, I am
Not a Risk To the Community, State, County or Our
Goverment. Health issues - Plus Ties with Family, Church
Co-operation with agents Stands as Proof. As For my
attorneys Theres Nothing personal herein about Them. I have
other issues or grounds I Need help in presenting To This
Honorable Court. Please help in this matter I humbly
ask and Pray.                    Respectfully and
                                 Sincerely.
                                 Mickey Moody
                                 2-25-06

AO886-C
GOVERNMENT
EXHIBIT

CASE
NO.

EXHIBIT
NO.    I





United States District Court
Middle District of Alabama
Judge Walker — ATTENTION
P.O. Box 711
Montgomery AL 36101

36101+0711

Mr & Mrs Micky Moody
4364 Co Rd 5
Kingston AL 34453

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNITED STATES OF AMERICA,        )
                                 )
v                                )        CR NO. 2:05-195-LSC
                                 )
MICKEY LEE MOODY,                )

## DEFENDANT S RESPONSE TO ORDER

COMES NOW, the Defendant, Mickey Lee Moody, by and through counsel, Maryanne

M. Prince, and hereby notifies the Court that he has met with his attorney and discussed his

concerns with counsel. Counsel states the following:

1.  Counsel met with Mr. Moody for over 75 minutes and discussed the merits of his

    case, possible motions and the general status issues regarding his health.

2.  Mr. Moody wishes to be released from custody and counsel has explained that in

    order to request a review of his detention order, new evidence would be required

    to present to the Court to show why he should be released. Counsel further

    advised Mr. Moody that the Order of Detention was based primarily upon his

    extensive history with the criminal justice system and that it was unlikely that he

    would be granted a new detention hearing. Nevertheless, Mr. Moody wishes

    counsel to request a new detention hearing, which she will do unless the Court

    orders otherwise.

3.  Mr. Moody expressed concerns about health problems he has been experiencing,

    and counsel confirmed with Mr. Moody s spouse that he has been advised by the

    physician at the jail he has suspicious spots on his thigh that need to be biopsied for

    possible melanoma. Mr. Moody has yet to have the biopsy done and requested



GOVERNMENT
EXHIBIT

CASE
NO.

EXHIBIT
NO.    J

that counsel inquire what other steps he needs to take to obtain medical care.

4.     At the close of the meeting, counsel assured Mr. Moody she would bring the two

above issues to the Court attention.   Mr. Moody seemed to be satisfied with

counsel s assurances at the close of the meeting.

Respectfully submitted this 9th day of March, 2006.


MARYANNE M. PRINCE
ASB-6515-E39M
Attorney for Defendant

OF COUNSEL:

631 S. Perry Street
Montgomery, AL 36104
Phone: 334-262-1006
FAX: 334-262-1066
maprince@knology.net

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2006, I electronically filed the foregoing Motion, with the Clerk of the Court using CM/ECF system which will send notification of such filing to the following: Karl Davie Cooke, Jr. and John T. Harmon, United States Attorney s Office, One Court Square, Montgomery, AL 36101 and by mailing a copy to Mr. Mickey Lee Moody, c/o Montgomery City Jail, 320 S. Ripley St. Montgomery, AL 36104.


/s/ Maryanne M. Prince
Maryanne M. Prince, Esq.
ASB-6515-E39M

### IN THE UNITED STATES DISTRICT COURT FOR THE
### MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

UNITED STATES OF AMERICA    )
    )
    )
v.    )    **CR. NO. 02:05-CR-195**
    )
    )
· **MICKEY LEE MOODY.**    )

### MOTION TO FILE OUT OF TIME

**COMES NOW** the Defendant, Mickey Lee Moody, by and through undersigned counsel,

Maryanne Prince, and moves this Court for an Order allowing him to file his Motion to Suppress

out of time.   Counsel was appointed to represent Mr. Moody on February 6, 2007.  Cut-offs for

all Pretrial Motions under Fed. R. Crim. P. 12(b) no later than two days before the first pretrial

conference in this case.   The first pretrial conference in this case was held scheduled for January

3, 2006, well before current counsel was appointed.

Counsel could not locate any indicia that prior counsel for Mr. Moody had filed any

motions under Fed. R. Crim. P. 12(b).  A review of the discovery provided by counsel after her

appointment indicates that Mr. Moody has valid and reasonable grounds to file a motion to

suppress the evidence and the search of Mr. Moody as set out in his Motion to Suppress.

The trial of this case is scheduled for April 17, 2006.  The Government will not be unduly

prejudiced by granting Mr. Moody's motion.

Therefore, Defendant respectfully requests that this Court enter an Order granting Mr.

Moody's Motion to File Out of Time.



AO88-C
**GOVERNMENT
EXHIBIT**

CASE
NO.

EXHIBIT
NO.  K

Respectfully submitted this 10th day of March, 2006.

/s/ Maryanne M. Prince
MARYANNE M. PRINCE (MEL007)
ASB-6515-E39M
Attorney for Defendant

ADDRESS OF COUNSEL:
ASB-6515-E39M
631 South. Perry Street
Montgomery, Alabama 36104
Phone: (334)-262-1006
FAX:  (334)-262-1066
maprince@knology.net

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing of this Waiver upon the following, by Electronic Mail Delivery CM/ECF or placing same in an addressed, postage prepaid envelope and deposited with the U.S. Post Office on this the 10th day of March, 2006.

Hon. Karl David Cooke, Jr., AUSA
U. S. Attorney's Office
P. O. Box 197
Montgomery, Alabama 36102-0197

/s/ Maryanne M. Prince
MARYANNE M. PRINCE (MEL007)
Attorney for Defendant

AO88-C
**GOVERNMENT
EXHIBIT**

CASE
NO.

EXHIBIT
NO.

## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **CR. NO. 02:05-CR-195** |
| | ) | |
| | ) | |
| **MICKEY LEE MOODY.** | ) | |

### MOTION TO SUPRESS

**COMES NOW** the Defendant, Mickey Lee Moody, by and through undersigned counsel,

Maryanne Prince, and moves this Court for an Order suppressing certain evidence seized through

the illegal detention and illegal search of the defendant and the defendant's property on March 28,

2005. In support of his motion, the Defendant shows the Court as follows:

1.       On March 28, 2005,  Deputy Sheriff Greg Jackson of the Covington County,

Alabama Sheriff's Departments stopped Mr. Moody in his vehicle detained Mr. Moody without

probable cause.  After being held and not allowed to leave the area of the stop, another Deputy

Sheriff Ray Mock, arrived at the stop location and searched the defendant and the defendant's

vehicle without a search warrant, consent or probable cause.

2.       The search yielded items of evidence after which the defendant was subsequently

charged and indicted on the instant offense, 18 U.S.C. 922(g) and (f).

3.       Moody fully anticipates the seized evidence will be offered againt the defendant in

the trial of this case.

4.       The facts of this case show that on March 28, 2005 Sheriff's Deputies from

Covington County were searching for escapee from the Covington County Jail when they stopped

Mr. Moody in the vicinity of Mr. Moody's resident located near Tin Top Road in Geneva County, Alabama.

5.      After determining that Mr. Moody was not the escapee from the Covington County Jail, instead of letting Mr. Moody go, Deputy Greg Jackson detained Mr. Moody, while he notified Deputy Greg Mock of Geneva County that he had detained Mr. Moody.  Mr. Moody was held at the stop location until Deputy Mock arrived.

6.      Once the Deputies who had stopped Mr. Moody and had determined that he was not the escapee from the Covington County Jail, they had no further reason to detain Mr. Moody.  The officers who stopped Mr. Moody exceeded the "reasonable scope" of the stop's original purpose, that is to determine if the person in the vehicle was one of the escapee's from the Covington County Jail. *Terry v. Ohio*, 392 U.S. 1 (U.S. 1968).

7.      A law enforcement officer may not delay in obtaining the information necessary to complete the traffic stop and in writing the citation in order to ask the motorist questions unrelated to the purpose of the stop in order to turn a hunch into reasonable suspicion which could justify a more extensive detention. *United States v. Pruitt*, 174 F.3d 1215 (11th Cir. 1999). The investigative detention usually must "last no longer than is necessary to effectuate the purpose of the stop," and "the scope of the detention must be carefully tailored to its underlying justification." *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325, 75 L. Ed. 2d 229 (1983).

8.      The stopping of the defendant's vehicle and subsequent search of the defendant and the defendant's vehicle was without probable cause.  Officers may not search private vehicles without consent or probable cause. *United States v. Ortiz*, 422 U.S. 891, 897 (U.S. 1975).

9.      The search of the vehicle and the search of defendant was in violation of the

Fourth Amendment of the Constitution of the United States.

  10. The stopping of the defendant's vehicle and subsequent detention and search was

unreasonable and violative of the stated constitutional safeguards.

  11. All evidence seized as a result of the illegal detention and illegal search must be

suppressed.

  Therefore, Defendant respectfully requests that this Court enter an Order suppressing any

article, thing, or testimony obtained as result of this illegal search, illegal seizure and all

subsequent investigation.

  Respectfully submitted this 10th day of March, 2006.

       /s/ Maryanne M. Prince
       MARYANNE M. PRINCE (MEL007)
       ASB-6515-E39M
       Attorney for Defendant

ADDRESS OF COUNSEL:
ASB-6515-E39M
631 South. Perry Street
Montgomery, Alabama 36104
Phone: (334)-262-1006
FAX:   (334)-262-1066
maprince@knology.net

## CERTIFICATE OF SERVICE

  I hereby certify that I have served a copy of the foregoing of this Waiver upon the following, by Electronic Mail Delivery CM/ECF or placing same in an addressed, postage prepaid envelope and deposited with the U.S. Post Office on this the 10th day of March, 2006.

Hon. Karl David Cooke, Jr., AUSA
U. S. Attorney's Office
P. O. Box 197
Montgomery, Alabama 36102-0197

       /s/ Maryanne M. Prince
       MARYANNE M. PRINCE (MEL007)
       Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | CR. NO. 02:05-CR-195 |
| | ) | |
| | ) | |
| MICKEY LEE MOODY. | ) | |

## MOTION TO SUPRESS

**COMES NOW** the Defendant, Mickey Lee Moody, by and through undersigned counsel, Maryanne Prince, and moves this Court for an Order suppressing certain evidence seized through the illegal detention and illegal search of the defendant and the defendant's property on March 28, 2005.  In support of his motion, the Defendant shows the Court as follows:

1.      On March 28, 2005,  Deputy Sheriff Greg Jackson of the Covington County, Alabama Sheriff's Departments stopped Mr. Moody in his vehicle detained Mr. Moody without probable cause.  After being held and not allowed to leave the area of the stop, another Deputy Sheriff Ray Mock, arrived at the stop location and searched the defendant and the defendant's vehicle without a search warrant, consent or probable cause.

2.      The search yielded items of evidence after which the defendant was subsequently charged and indicted on the instant offense, 18 U.S.C. 922(g) and (f).

3.      Moody fully anticipates the seized evidence will be offered againt the defendant in the trial of this case.

4.      The facts of this case show that on March 28, 2005 Sheriff's Deputies from Covington County were searching for escapee from the Covington County Jail when they stopped

Mr. Moody in the vicinity of Mr. Moody's resident located near Tin Top Road in Geneva County, Alabama.

5.    After determining that Mr. Moody was not the escapee from the Covington County Jail, instead of letting Mr. Moody go, Deputy Greg Jackson detained Mr. Moody, while he notified Deputy Greg Mock of Geneva County that he had detained Mr. Moody.  Mr. Moody was held at the stop location until Deputy Mock arrived.

6.    Once the Deputies who had stopped Mr. Moody and had determined that he was not the escapee from the Covington County Jail, they had no further reason to detain Mr. Moody. The officers who stopped Mr. Moody  exceeded the "reasonable scope" of the stop's original purpose, that is to determine if the person in the vehicle was one of the escapee's from the Covington County Jail. *Terry v. Ohio*, 392 U.S. 1 (U.S. 1968).

7.    A law enforcement officer may not delay in obtaining the information necessary to complete the traffic stop and in writing the citation in order to ask the motorist questions unrelated to the purpose of the stop in order to turn a hunch into reasonable suspicion which could justify a more extensive detention. *United States v. Pruitt*, 174 F.3d 1215 (11th Cir. 1999). The investigative detention usually must "last no longer than is necessary to effectuate the purpose of the stop," and "the scope of the detention must be carefully tailored to its underlying justification." *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325, 75 L. Ed. 2d 229 (1983).

8.    The stopping of the defendant's vehicle and subsequent search of the defendant and the defendant's vehicle was without probable cause.  Officers may not search private vehicles without consent or probable cause. *United States v. Ortiz*, 422 U.S. 891, 897 (U.S. 1975).

9.    The search of the vehicle and the search of defendant was in violation of the

Fourth Amendment of the Constitution of the United States.

10.    The stopping of the defendant's vehicle and subsequent detention and search was unreasonable and violative of the stated constitutional safeguards.

11.    All evidence seized as a result of the illegal detention and illegal search must be suppressed.

Therefore, Defendant respectfully requests that this Court enter an Order suppressing any article, thing, or testimony obtained as result of this illegal search, illegal seizure and all subsequent investigation.

Respectfully submitted this 10th day of March, 2006.

/s/ Maryanne M. Prince
MARYANNE M. PRINCE (MEL007)
ASB-6515-E39M
Attorney for Defendant

ADDRESS OF COUNSEL:
ASB-6515-E39M
631 South. Perry Street
Montgomery, Alabama 36104
Phone: (334)-262-1006
FAX:   (334)-262-1066
maprince@knology.net

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing of this Waiver upon the following, by Electronic Mail Delivery CM/ECF or placing same in an addressed, postage prepaid envelope and deposited with the U.S. Post Office on this the 10th day of March, 2006.

Hon. Karl David Cooke, Jr., AUSA
U. S. Attorney's Office
P. O. Box 197
Montgomery, Alabama 36102-0197

/s/ Maryanne M. Prince
MARYANNE M. PRINCE (MEL007)
Attorney for Defendant

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 1:05CR195-LSC |
| | ) | |
| MICKEY LEE MOODY | ) | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS

**COMES NOW** the United States of America, by and through Leura G. Canary, United

States Attorney for the Middle District of Alabama, and hereby files this Response to

Defendant's Motion to Suppress. In support of this motion, the Government offers the following:

1.      On or about March 28, 2005, Deputies from the Geneva County and Covington

County Sheriffs' Offices were looking for Charles Pierce and other escapees from the Covington

County Jail. Deputy Sheriff Ray Mock of the Geneva County Sheriff's Office had received

information that Mr. Pierce had been in contact and was possibly staying with his family

members on Tin Top Road in rural Geneva County. Tin Top Road is a short dirt road,

approximately 2.5 miles in length, and has few houses on it. The Defendant, Mickey Moody, also

lives on Tin Top Road and is a known associate of the Pierce family. Both Pierce and Moody

have a history of methamphetamine production.

2.      As the sheriffs' offices were conducting surveillance of the traffic going into Tin

Top Road, Mr. Moody approached in his car and told one of the deputies, Greg Jackson, that he

needed to see Deputy Sheriff Ray Mock.  Deputy Jackson radioed this information to Deputy

Mock, who arrived within a minute of receiving the call.

3.      Deputy Mock walked up to Moody's car and immediately noticed the odor of

marijuana coming from inside the car. Deputy Mock told Mr. Moody he would like to talk to

A088-C
GOVERNMENT
EXHIBIT

CASE
NO.

EXHIBIT
NO.       M

him. Mr. Moody responded he would like to talk to Deputy Mock, too.  Deputy Mock then asked

Moody to step out of the car to talk with him.

      4.      When Moody stepped out of the car, Deputy Mock immediately noticed a

handgun on the right side of Mr. Moody's belt. Because Deputy Mock knew that Moody was a

convicted felon and was not allowed to possess a firearm, he placed Mr. Moody under arrest for

the firearms charge. A search of Mr. Moody's person and car revealed drug paraphernalia and

marijuana.

      5.      At Moody's request, Deputies drove Moody's car to his home instead of calling a

tow truck. When they arrived at Moody's home, two white males fled an automobile parked on

Moody's yard. A subsequent consent search of Moody's barn revealed a laboratory for

manufacturing methamphetamine.

**Argument and Citation of Authority**

**1. The Court should deny the Defendant's Motion to Suppress because Deputy Brock**
**observed the firearm in plain view during a consensual encounter.**

A. *The "stop" of Moody's automobile.*

      The Government expects the evidence to show that Mr. Moody's car was not stopped, but

instead will show that Moody approached the officers to speak with them. Because the initial

encounter was consensual, there was no seizure within the meaning of the 4th Amendment, and

the results of this encounter should not be suppressed.

B. *The seizure of the handgun from Mr. Moody's person.*

      Because the handgun was in plain view on Mr. Moody's person, there is no "search" and

the seizure of the handgun was reasonable in light of the officer's knowledge of Mr. Moody's

status as a convicted felon. See *Horton v. California*, 496 U.S. 128 (1990); *Minnesota v.*

*Dickerson*, 508 U.S. 366 (1993).

Even if the handgun were not in plain view, the odor of marijuana coming from the vehicle established a right to search the car, and would have led to the eventual discovery of the marijuana seized, and the handgun on Mr. Moody's person. See *Nix v. Williams*, 467 U.S. 431 (1984); *United States v. Hernandez-Cano*, 808 F.2d 779 (11th Cir. 1987), denying defendants' motions to suppress where police can demonstrate an independent source that would have led to the eventual discovery of the subject evidence.

C. *The search of Mr. Moody's person and automobile incident to his arrest.*

Subsequent to his arrest, Deputies conducted a search of Mr. Moody's person and automobile. Because the Deputies did not conduct the search of Mr. Moody's person or vehicle until he had been placed under arrest, the search is lawful and the motion to suppress should be denied. See *South Dakota v. Opperman*, 428 U.S. 364 (1977), and *Sammons v. Taylor*, 967 F. 2d 1533 (11th Cir. 1992), upholding the search of an arrestee's car incident to arrest. See also *Chimel v. California*, 395 U.S. 752 (1969) and *United States v. Rosenthal*, 793 F. 2d 1214 (11th Cir. 1986), upholding the search of an arrestee's person incident to arrest.

Based on the foregoing, the Government respectfully requests that this court conduct a hearing and deny the Defendant's Motion to Suppress.

Respectfully submitted this the 13th day of March, 2006.

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/K. David Cooke, Jr.
K. DAVID COOKE, JR.
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334) 223-7280
FAX: (334) 223-7135
E-mail: david.cooke@usdoj.gov

**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. <u>1:05cr195-LSC</u> |
| | ) | |
| MICKEY LEE MOODY | ) | |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 13, 2006, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system which will send notification of such filing to the

following: Maryanne Prince, Esq.

Respectfully submitted,

/s/K. David Cooke, Jr.
K. DAVID COOKE, JR.
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax: (334)223-7135
E-mail: <u>david.cooke@usdoj.gov</u>

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:05cr195-LSC |
| | ) | |
| MICKEY LEE MOODY | ) | |

## ORDER

Upon consideration of defendant's motion to file out of time (Doc. # 47), filed March 10, 2006, and for good cause, it is

ORDERED that the motion be and hereby is GRANTED. It is further

ORDERED that a hearing to address the motion to suppress is scheduled for 10:00 a.m. on March 31, 2006 before Judge L. Scott Coogler in courtroom 2-D, Frank M. Johnson, Jr. United States Courthouse Complex, One Church Street, Montgomery, Alabama.

If the defendant is in custody, the United States Marshal or the person having custody of the defendant shall produce the defendant for this proceeding.

DONE, this 14th day of March, 2006.


/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE



AO88B-C
**GOVERNMENT
EXHIBIT**

CASE
NO.

EXHIBIT
NO.

### IN THE UNITED STATES DISTRICT COURT FOR THE
### MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

UNITED STATES OF AMERICA            )
                                    )
                                    )
v.                                  )        CR. NO. 02:05-CR-195
                                    )
                                    )
MICKEY LEE MOODY.                   )


### UNOPPOSED MOTION FOR EXTENSION OF TIME TO CHANGE PLEA

**COMES NOW** the Defendant, Mickey Lee Moody, by and through undersigned counsel,

Maryanne Prince, and moves this Court, for an extension of time in which to file his notice of

intent to change plea.  In support of his motion the Defendant states:.

1.   The Court's deadline for filing a notice of intent to change plea is April 5, 2006.

2.   The Defendant is in earnest discussions with the U. S. Attorney's Office and is

     meeting with the government for a second proffer on April 5, 2006.

3.   In order to complete his proffer and complete plea discussions the parties to this

     action require an additional two day extension of time.

4.   The Government has no objection to a two day extension.

WHEREFORE, Mr. Moody respectfully requests that this Motion be granted and that he

be given until Friday, April 7, 2006 in which to file a change of plea motion should he and the

Government enter into a plea agreement..

Respectfully submitted this 5th day of April, 2006.


                                        /s/ Maryanne M. Prince
                                        MARYANNE M. PRINCE (MEL007)
                                        Attorney for Defendant



ADDRESS OF COUNSEL:
ASB-6515-E39M
631 South. Perry Street
Montgomery, Alabama 36104
Phone: (334)-262-1006
FAX:   (334)-262-1066
maprince@knology.net

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing of this Motion for Extension of Time upon the following, by Electronic Mail Delivery CM/ECF or placing same in an addressed, postage prepaid envelope and deposited with the U.S. Post Office on this the 5th day of April, 2006.

Hon. Karl David Cooke, Jr., AUSA
U. S. Attorney's Office
P. O. Box 197
Montgomery, Alabama 36102-0197

/s/ Maryanne M. Prince
MARYANNE M. PRINCE (MEL007)
Attorney for Defendant

```
            IN THE DISTRICT COURT OF THE UNITED STATES
                FOR THE MIDDLE DISTRICT OF ALABAMA
                        SOUTHERN DIVISION

UNITED STATES OF AMERICA      )
                              )
            v.                )     CR. NO. 1:05CR195-T
                              )
MICKEY LEE MOODY              )
```

### PLEA AGREEMENT

DEFENSE COUNSEL:            MARYANNE PRINCE

ASSISTANT U.S. ATTORNEY:    K. DAVID COOKE, JR.

### COUNT AND STATUTE CHARGED:

Count 1        <u>18 U.S.C. § 922(g)(1)</u>
               Felon In Possession Of A Firearm

### COUNT PLEADING PURSUANT TO PLEA AGREEMENT:

Count 1        18 U.S.C. § 922(g)(1)

### PENALTIES BY COUNT – MAXIMUM PENALTY:

Count 1        <u>18 U.S.C. § 922(g)(1)</u>
               NMT 10Y or
               NMT $250,000 or both;
               NMT 3Y SUP REL;
               $100 AF;
               VWPA.

### ELEMENTS OF THE OFFENSE:

   <u>18 U.S.C. § 922(g)(1)</u>

   First:    The defendant knowingly possessed a firearm or
             ammunition in or affecting interstate commerce, as
             charged; and

   Second:   Before the defendant possessed the firearm or
             ammunition, the defendant had been convicted in a
             court of a crime punishable by imprisonment for a
             term in excess of one year, that is, a felony
             offense.



AO88-C
GOVERNMENT
EXHIBIT

CASE
NO.

EXHIBIT
NO.  9

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

K. David Cooke, Jr., Assistant United States Attorney and Maryanne Prince, attorney for the defendant, pursuant to Rule 11(c)(1)(C), Federal Rules of Criminal Procedure, as Amended, have, with the authorization of the undersigned defendant, heretofore entered into discussions with a view towards reaching a pretrial conclusion of the charges pending in the Indictment herein and a Plea Agreement has been reached by said parties.  The plea is being submitted to the Court pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), and the parties understand that, if the terms of the Plea Agreement are not accepted by the Court, the defendant will be allowed to withdraw the defendant's plea of guilty and proceed to trial.  If the Court accepts this agreement, however, and defendant thereafter breaches this agreement, his guilty plea may not be withdrawn.

### GOVERNMENT'S PROVISIONS

1. Upon entering a plea of guilty by the defendant to the offense charged in Count 1 of the Indictment, the attorney for the Government will do the following:

a.  The Government will agree that a 2-level reduction in the applicable offense level pursuant to U.S.S.G. § 3E1.1(a) for the defendant's acceptance of responsibility is appropriate, so long as the defendant does not obstruct justice or otherwise

2

fail to accept responsibility for the offense conduct.  Should the Government find the defendant assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and this Court to allocate their resources efficiently, and if Defendant otherwise qualifies, the Government will move at sentencing for a further reduction of one level, pursuant to U.S.S.G. § 3E1.1(b). Determination of whether the defendant met the defendant's obligations to qualify for the reduction pursuant to U.S.S.G. § 3E1.1 is at the sole discretion of the United States.

b.  The government will agree to recommend the low-end of the applicable guideline level as accepted by the United States District Court for the Middle District of Alabama.

c.  The government will agree that the Defendant shall not receive a sentence in excess of 180 months. Otherwise, the Defendant shall have the right to withdraw his plea under 11(c)(1)(C).

d.  Agree that within one year of sentencing, the United States will evaluate any information provided by the defendant and consider, pursuant to Rule 35(b) Federal Rules of Criminal Procedure, reducing defendant's sentence for substantial assistance. **The United States shall have the sole discretion in**

3

**determining if any information provided by the defendant qualifies as "substantial."**

2. The United States reserves the right to inform the Court and the Probation Office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses and the defendant's background.

### DEFENDANT'S PROVISIONS

3. The defendant agrees to the following:

    a.    To plead guilty to Count 1 of the Indictment.

    b.    To forfeit all firearms in his possession.

    c.    Not commit any State, local or federal offenses.

    d.    Comply with the cooperation agreement as detailed below.

### COOPERATION AGREEMENT

4. The Defendant agrees to make a good faith effort to assist the United States in the investigation and prosecution of other persons involved in the illegal possession, manufacture or distribution of controlled substances or firearms; or any other illegal activity of which the Defendant has personal knowledge.

    a.    The Defendant agrees to cooperate fully and testify truthfully against any and all persons as to whom he may have knowledge at grand jury, trial (criminal or civil), or whenever called upon to do so. The Defendant understands that this agreement does not require him to implicate any other

4

particular individual or individuals nor to "make a case," rather
it requires him to be truthful and to testify truthfully whenever
called upon.  The Defendant agrees to make himself available for
the review of documents and other materials and for interviews by
law enforcement officers and attorneys for the United States upon
reasonable request and to fully and truthfully respond to all
questions asked of him by law enforcement officers and attorneys
for the United States.  He agrees to fully and truthfully
disclose to the United States everything he knows about any and
all documents and materials in his possession that relate to
violations of federal firearms statutes and any other criminal
violations in the Middle District of Alabama and elsewhere.  The
Defendant agrees to submit to a polygraph examination conducted
by the United States if requested to do so.

      b.   Provided that the Defendant satisfies the
terms of this plea agreement, any information that he truthfully
discloses to the United States during the course of his
cooperation, concerning related offenses, will not be used
against him, directly or indirectly.  The Defendant understands
that this agreement does not bar his prosecution for capital
felonies, perjury, false statements, and obstruction of justice.

      c.   If the Defendant has failed or should fail in
any way to fulfill completely his obligations under this
agreement, then the United States will be released from its

commitment to honor all of its obligations to him.  Thus, if at

any time he should knowingly and willfully withhold evidence from

the United States investigators or attorneys prior to or during

his testimony before grand juries or in trials, or commits any

state or federal offense, then the United States will be free to:

(1)  prosecute him for perjury, false declaration, false

statement, and/or obstruction of justice (18 U.S.C. Section 1621,

1623, 1001, 1503); (2) to prosecute him for all violations of

federal criminal law which he has committed; (3)  to use against

him in all of those prosecutions and sentencings the Indictment

and documents that he has himself disclosed or furnished to the

United States during the course of his cooperation;  (4)  to

recommend a maximum sentence; and (5) to seek forfeiture of any

and all forfeitable properties of the. Defendant.  The parties

agree to submit to the court, to be decided by a preponderance of

the evidence standard, the question of whether Defendant has

breached this agreement.  Defendant further understands that upon

any breach of this plea agreement, by the Defendant, he will not

be entitled to withdraw his guilty plea in this case.

### FACTUAL BASIS

On or about March 28, 2005, in Geneva County, within the

Middle District of Alabama, MICKEY LEE MOODY, defendant herein,

having been convicted on or about August 21, 2001, of a felony, a

crime punishable by imprisonment for a term exceeding one year

6

under the laws of the State of Alabama, to-wit: two counts of
Unlawful Possession of a Controlled Substance (CC-2001-124), in
the Circuit Court of Covington County, Alabama; did knowingly
possess in and affecting commerce a firearm, to-wit: a Davis
Industries, Model D-32, .32 semi-automatic pistol, serial number
100873, all in violation of Title 18, United States Code, Section
922(g)(1).

### DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK

Understanding that 18 U.S.C. § 3742 provides for appeal
by a defendant of the sentence under certain circumstances, the
defendant expressly waives any and all rights conferred by
18 U.S.C. § 3742 to appeal the sentence.  Defendant further
expressly waives the right to appeal the sentence on any other
ground and waives the right to attack the sentence in any
post-conviction proceeding.

The government does not waive its right to appeal any
order dismissing the Indictment, vacating a sentence, or
otherwise terminating the prosecution at any stage of the
proceedings.  Further, the parties agree that nothing in this
agreement shall affect the government's right and/or duty to
appeal as set forth in 18 U.S.C. § 3742(b).

7

## DEFENDANT'S UNDERSTANDING AND ACKNOWLEDGMENT

5.   The defendant, before entering a plea of guilty to Count 1 of the Indictment as provided for herein by said Plea Agreement, advises the Court that:

a.   The discussions between the attorney for the government and the attorney for the defendant towards reaching an agreed plea in this case have taken place with the defendant's authorization and consent.

b. Defendant acknowledges that a breach of this federal plea agreement will not entitle him to withdraw his guilty plea in this case.   Defendant understands and acknowledges that defendant's guilty plea will remain in full force and effect upon any breach of this agreement by the defendant.

c.   The defendant further understands that, pursuant to 18 U.S.C. § 3013, said $100.00 assessment fee is to be paid by the defendant on the date of sentencing.   The defendant will make an honest, good faith effort to pay said fee as directed by the Financial Litigation Section of the United States Attorney's Office.   The defendant further understands that by completing the financial statement, the defendant is representing that it is true and accurate to the best of the defendant's information, knowledge, and belief.

d.   The defendant understands that the defendant has a right to be represented by an attorney at every stage of

8

the proceedings against the defendant herein and is represented
by the defendant's undersigned attorney.

       e. .The defendant understands that the defendant
has the right to plead not guilty and has the right to be tried
by a jury and, at a trial thereof, has the right to the
assistance of counsel, the right to confront and cross-examine
witnesses against the defendant, the right to call witnesses in
the defendant's own behalf, and the right not to be compelled to
incriminate the defendant, and that if the defendant enters a
plea of guilty herein, there will not be a further trial of any
kind and that by the entry of such a plea, the defendant waives
the right to a trial by jury or to a trial before the Court.

       f.  The defendant further understands that in
entering a plea of guilty herein, the Court may ask questions
about the offense to which the plea is entered and further
understands that if the defendant answers .these questions under
oath, on the record, and in the presence of counsel, which
questions and answers would be recorded, that the answers may
later be used against the defendant in a prosecution for perjury
or false statement if the answers are not truthful.

       g.  The Defendant further understands and advises
the Court that the Plea Agreement as set forth herein and the
plea to be entered by the defendant as a result thereof is
voluntary on the defendant's part and is not the result of any

force or threats or of any promises apart from the aforesaid Plea Agreement.  The defendant further advises the Court that the Plea Agreement set forth herein is the result of prior discussions between the attorney for the government and the attorney for the defendant, all conducted with the defendant's authorization, knowledge, and consent.

h.  The defendant further advises the Court that the defendant's understanding of this Plea Agreement is as set forth in this document.

i.  The defendant further advises the Court that it is understood that the government can only make a recommendation which is not binding on the Court.

j.  The defendant further advises the Court that the defendant understands and has been advised that evidence of a plea of guilty, later withdrawn or an offer to plead guilty to the crime charged in the Indictment herein, or of statements made in connection with and relevant to said plea or offer to plead, shall not be admissible in any civil or criminal proceedings against the defendant.  However, the defendant does understand that evidence of a statement made in connection with and relevant to a plea of guilty, later withdrawn, or an offer to plead guilty to the crimes charged in the Indictment herein, is admissible in a criminal proceeding for perjury or false statement when the

10

statement was made by the defendant under oath, on the court
record, and in the presence of counsel.

k.   The defendant is satisfied that defense
counsel has been competent and effective in representing
defendant.

6.   The undersigned attorneys for the government and
for the defendant represent to the court that the foregoing Plea
Agreement is the agreement of the parties that has been reached
pursuant to the Plea Agreement procedure provided for in Rule 11,
Federal Rules of Criminal Procedure, as Amended.   The attorney
for the defendant further advises the Court that the defendant
has been advised of the nature of the charge to which the
foregoing described plea is to be offered, and that the defendant
has been advised of the defendant's right to plead not guilty and
to be tried by a jury on all issues herein; of the maximum
possible penalty provided by law; that by the entering of a plea
of guilty as aforesaid, the defendant waives the right to be
tried by a jury or by the Court, waives the right to confront and
cross-examine witnesses against the defendant and the right not
to be compelled to incriminate the defendant; and that if the
defendant pleads guilty, there will not be a further trial of any
kind.   Further, the defendant has been advised that if the
defendant pleads guilty, the Court may ask questions about the
offense to which the defendant has pleaded and that if the plea

11

is rejected or later withdrawn, that the answers to such questions may not be used against the defendant in a civil or criminal proceeding, but that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement if the answers are not truthful.

7.  The defendant understands that the U.S. Probation Office will prepare a presentence investigation report for the Court.  The Probation Officer will consider the defendant's conduct related to the offense to which the plea is offered, as well as the defendant's criminal history.  The offense level or criminal history category, as calculated by the Probation Officer and determined by the court, may differ from that projected by defendant's counsel or the U.S. Attorney.  In the event that the Court determines the defendant's offense level or criminal history category is higher than the defendant anticipated, the defendant will have the right to withdraw the plea on that basis.

This __10__ day of April, 2006.

Respectfully submitted,

LEURA G. CANARY
UNITED STATES ATTORNEY

Andrew Schiff
Deputy Criminal Chief

K. David Cooke, Jr.
Assistant United States Attorney

12

I have read the foregoing Plea Agreement, understand the same, and the matters and facts set forth therein accurately and correctly state the representations that have been made to me and accurately set forth the conditions of the Plea Agreement that has been reached.

IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS" PARAGRAPH ABOVE ARE TRUE AND CORRECT AND THAT I AM SATISFIED THAT I HAVE RECEIVED COMPETENT ADVICE AND REPRESENTATION FROM MY DEFENSE COUNSEL, MARYANNE PRINCE.

_____
Mickey Lee Moody/DEFENDANT/

_____
Date    4 - 10 - 2006

_____
MaryAnne Prince
Attorney for the Defendant

_____
Date    April 10, 2006

1        IN THE UNITED STATES DISTRICT COURT
                          FOR
2            THE MIDDLE DISTRICT OF ALABAMA

3

4

5   THE UNITED STATES
       OF AMERICA
6
          vs.                        CRIMINAL ACTION NO.
7                                    1:05-Cr-195-LSC
    MICKEY LEE MOODY
8

9

10

11

12

13

14

15

16                    CHANGE OF PLEA

17

18

19                 *   *   *   *   *   *   *   *   *

20

21
    BEFORE:          The Hon. Susan Russ Walker
22
    HEARD AT:        Montgomery, Alabama
23
    HEARD ON:        April 10, 2006
24
    APPEARANCES:     K. David Cooke, Esq.
25                   Maryann Prince, Esq.

**GOVERNMENT EXHIBIT**
CASE NO.
EXHIBIT NO. Q

```
 1   WHEREUPON, THE FOLLOWING PROCEEDINGS WERE HEARD BEFORE
     THE HON. SUSAN RUSS WALKER ON APRIL 10, 2006 AT THE
 2   UNITED STATES COURTHOUSE IN MONTGOMERY, ALABAMA:

 3

 4           THE COURT:  This is United States vs. Mickey

 5   Lee Moody, 1:05-Cr-195.  We are here for a change of

 6   plea.

 7           Mr. Moody, would you stand, please.

 8           Previously the Court was informed that the

 9   defendant wishes to change his plea and consents to

10   having the guilty plea proceedings conducted by a United

11   States magistrate judge.  I'm a United States magistrate

12   judge.  The next higher ranking judge is a district

13   judge, and you have the right to have a district judge

14   take your plea.  If you wish to have me take your plea

15   today, you need to read and sign the consent form that's

16   been provided to you.

17           (Whereupon, the defendant and counsel executed

18   said document.)

19           THE COURT:  The form has been signed.

20           Will Counsel briefly summarize the terms of

21   the plea agreement.

22           MR. COOKE:  Yes, Your Honor.  He would plead

23   guilty as charged in the indictment.  The United States

24   would agree to recommend a sentence that does not exceed

25   one hundred and eighty months.  He may qualify as an
```

```
 1   armed career offender based on that.  There is one other

 2   thing.  He would also agree to cooperate with the

 3   Government.

 4           THE COURT:  Is there the usual waiver of

 5   appeal and collateral attack?

 6           MR. COOKE:  That is also included, Your Honor.

 7           THE COURT:  So this is an eleven C one C plea?

 8           MR. COOKE:  Correct.

 9           THE COURT:  Is there anything else?

10           MS. PRINCE:  Yes.  There is an agreement that

11   they will reach a two level reduction in the applicable

12   offense, and it will be assisted by pleading guilty

13   early that they will recommend another one level so

14   there will be a total of three.

15           The total sentence would not be in excess of a

16   hundred and eighty months.

17           They have agreed to recommend the low end of

18   the guideline range.

19           And the other is the last in paragraph seven

20   on page twelve there is an understanding that if the

21   Court determines the offense level and the criminal

22   history category is higher than what we've anticipated,

23   two lawyers trying to figure this out, that he would

24   have the right to withdraw his plea on that basis.  I

25   think we're close, but we just put that in just to be
```

```
 1   safe.

 2          THE COURT:  All right.  Everybody has the same

 3   understanding, though?

 4          MR. COOKE:  Yes, Your Honor.

 5          THE COURT:  Okay.  We'll swear in the

 6   defendant.

 7          (Whereupon, the defendant was duly sworn.)

 8          THE COURT:  Why don't you pull that microphone

 9   towards you so we'll be sure to hear you.

10          Do you understand that you are now under oath,

11   and that if you answer any of the questions asked here

12   falsely, your answers may later be used against you in

13   another prosecution for perjury or make a false

14   statement?

15   A    Yes, ma'am.

16          THE COURT:  What is your full name, please?

17   A    Mickey Lee Moody.

18          THE COURT:  How old are you?

19   A    Fifty-four.

20          THE COURT:  How far did you go in school?

21   A    Sixth grade.

22          THE COURT:  Have you been treated recently for

23   any mental illness or addiction to narcotic drugs of any

24   kind?

25   A    Yes, ma'am.
```

```
 1              THE COURT:  Which of the two?

 2   A    Bullock Correctional Facility, state prison before

 3   I came here.  Just mental health, depression.

 4              THE COURT:  Okay.  So you have been treated

 5   for depression recently?

 6   A    Yes, ma'am, I believe that's what my last meeting

 7   with the counselor was.

 8              THE COURT:  Okay.  Have you been prescribed

 9   any medication?

10   A    No, ma'am.

11              THE COURT:  Okay.  Does any mental health

12   treatment that you had or any mental illness that you

13   may have give you any problem understanding me today?

14              (Whereupon, Ms. Prince conferred with the

15   defendant off the record and out of the hearing of the

16   other courtroom participants.)

17   A    Yes, ma'am, I understand.

18              THE COURT:  That's really my question.  Do you

19   understand me?

20   A    Yes, ma'am.

21              THE COURT:  Will you stop me if you don't for

22   any reason, or you want me to go back over something?

23              MS. PRINCE:  If you don't understand what

24   she's saying, you may stop her and ask her to repeat it.

25   A    Yes, ma'am.
```

```
 1                THE COURT:  Will you do that if you have any
 2    problem understanding me?
 3    A    Yes, ma'am.
 4                THE COURT:  All right.  Are you currently
 5    under the influence of any drug, medication or alcoholic
 6    beverage of any kind?
 7    A    No, ma'am.
 8                THE COURT:  Have you received a copy of the
 9    indictment pending against?  You that is the written
10    charges made against you in this case?
11    A    Yes, ma'am, I believe so.  I couldn't keep my
12    paperwork over at the jail because of possible trouble
13    over paperwork, but I believe I've seen it.
14                THE COURT:  All right.  Do you want to take a
15    look it, or are you satisfied that you've seen it?
16    A    No, ma'am, I'm satisfied.
17                THE COURT:  Have you fully discussed the
18    charges and the case in general with Ms. Prince as your
19    counsel?
20    A    Yes, ma'am.
21                THE COURT:  Are you fully satisfied with the
22    counsel, representation and advice given to you in this
23    case by your attorney, Miss Prince?
24    A    Yes, ma'am.
25                THE COURT:  There is a written plea agreement
```

```
 1   in this case?

 2   A    Yes, ma'am.

 3            THE COURT:  Did you have the opportunity to

 4   either read it or to have it read to you, and to discuss

 5   the plea agreement with your lawyer before you signed

 6   it?

 7   A    Yes, ma'am.

 8            THE COURT:  Does the written plea agreement

 9   contain or include all of your agreement with the

10   Government?

11   A    Yes, ma'am.

12            THE COURT:  Do you understand the terms of the

13   plea agreement?

14   A    Yes, ma'am.

15            THE COURT:  Has anyone made any other or

16   different promise or assurance of any kind to you in an

17   effort to induce you to plead guilty in this case?

18   A    No, ma'am.

19            THE COURT:  Do you understand that if the

20   Court chooses not to follow the terms of the plea

21   agreement, the judge will give you the opportunity to

22   withdraw your plea of guilty?

23   A    Yes, ma'am.

24            THE COURT:  And do you understand that if you

25   choose not to withdraw your plea under those
```

```
 1   circumstances, he may impose a more severe sentence

 2   without being bound by the plea agreement?

 3   A    Yes, ma'am.

 4        THE COURT:  Has anyone attempted in any way to

 5   force you to plead guilty in this case?

 6   A    No, ma'am.

 7        THE COURT:  Are you pleading guilty of your

 8   own free will because you are guilty?

 9   A    Yes, ma'am.

10        THE COURT:  Do you understand that the offense

11   to which you are pleading guilty is a felony offense,

12   that if your plea is accepted you will be adjudged

13   guilty of that offense, and that such adjudication may

14   deprive you of valuable civil rights, such as the right

15   to vote, the right to hold public office, the right to

16   serve on a jury and the right to possess any kind of

17   firearm?

18   A    Yes, ma'am.

19        THE COURT:  The maximum penalty provided by

20   law for this charge is no more than two hundred and

21   fifty thousand dollars fine, no more than ten years

22   imprisonment, or both the fine and the imprisonment, no

23   more than three years supervised release, a one hundred

24   dollar assessment fee, and you may be asked to make

25   restitution to any victim of the offense.  Do you
```

1    understand the maximum punishment?

2    A    Yes, ma'am.

3            THE COURT:  With regard to supervised release,

4    do you understand that if you violate the conditions of

5    supervised release you can be given additional time in

6    prison?

7    A    Yes, ma'am.

8            THE COURT:  Do you understand that you must

9    pay a special assessment fee of one hundred dollars in

10   this case?

11   A    Yes, ma'am.

12           THE COURT:  Do you understand that under the

13   Sentencing Reform Act of 1984 the United States

14   Sentencing Commission has issued guidelines for judges

15   to follow in determining the sentence in a criminal

16   case?

17   A    Yes, ma'am.

18           THE COURT:  And do you understand that under

19   recent Supreme Court decisions, those sentencing

20   guidelines are now considered to be advisory sentencing

21   guidelines?

22   A    Yes, ma'am.

23           THE COURT:  Have you and your attorney talked

24   about how the advisory sentencing guidelines might apply

25   to your case?

```
 1   A    I believe we have.

 2            THE COURT:  Okay.  Do you want any additional

 3   time to talk to her about that?  Do you want to talk to

 4   her about it any further?

 5   A    No.

 6            MS. PRINCE:  We've discussed them at great

 7   length.

 8            THE COURT:  Okay.  Do you remember that you

 9   have discussed them with her?

10   A    Yes, ma'am.

11            THE COURT:  All right.  Do you also understand

12   that parole has been abolished, and that if you are

13   sentenced to prison you will not be released on parole?

14   A    Yes, ma'am.

15            THE COURT:  Do you understand that under some

16   circumstances you or the Government may have the right

17   to appeal any sentence that the Court imposes?

18   A    Yes, ma'am.

19            THE COURT:  And do you understand that by

20   entering into this plea agreement and entering a plea of

21   guilty, you will have waived or given up your right to

22   appeal or to collaterally attack all or part of your

23   sentence?

24   A    Yes, ma'am.

25            THE COURT:  Do you understand that you have
```

1   the right to plead not guilty to any offense charged

2   against you and to persist in that plea, that you would

3   then have the right to a trial by jury and that at trial

4   you would be presumed to be innocent and the Government

5   would have to prove your guilt beyond a reasonable

6   doubt?

7   A    Yes, ma'am.

8        THE COURT:  Do you understand that you would

9   have the right to the assistance of counsel for your

10  defense, the right to see and hear all the witnesses and

11  have them cross examined in your defense, the right on

12  your own part to decline to testify unless you

13  voluntarily elected to do so in your own defense, and

14  the right to the issuance of subpoenas or compulsory

15  process to compel the attendance of witnesses to testify

16  in your defense?

17  A    Yes, ma'am.

18       THE COURT:  Do you understand that should you

19  decide not to testify or put on any evidence, these

20  facts cannot be used against you?

21  A    Yes, ma'am.

22       THE COURT:  Do you further understand that by

23  entering a plea of guilty, if that plea is accepted by

24  the district judge there will be no trial, and you will

25  have waived, or given up your right to a trial, as well

1   as those other rights associated with a trial as I just

2   described it?

3   A    Yes, ma'am.

4          THE COURT:  The charge to which you're

5   pleading guilty is set out in count one of the

6   indictment which charges that on or about March 28, 2005

7   in Geneva County within the Middle District that you,

8   having been convicted on August 21st, 2001 in the

9   Circuit Court of Covington County, Alabama of two counts

10  of unlawful possession of a controlled substance, that

11  is both felony offenses, knowingly possessed in and

12  affecting commerce a firearm and ammunition, that is a

13  Vegas Industries model D thirty-two thirty-two caliber

14  semiautomatic pistol, serial number one zero zero eight

15  seven three, in violation of 18 U. S. C., Section nine

16  twenty-two G one.  Do you understand that's the offense

17  to which you are pleading guilty?

18  A    Yes, ma'am.

19         THE COURT:  Do you understand there is a

20  forfeiture allegation in this indictment in which the

21  Government indicates that it will ask you to forfeit

22  that semiautomatic pistol or its equivalent if you do

23  plead guilty?

24  A    Yes, ma'am.

25         THE COURT:  Or are convicted.

```
 1          The elements of this offense which the

 2    Government would have to prove in your case beyond a

 3    reasonable doubt are first, that you knowingly possessed

 4    a firearm or ammunition in or affecting interstate

 5    commerce as charged; and, second, that before you

 6    possessed the firearm or ammunition you had been

 7    convicted in a court of a crime punishable by

 8    imprisonment for a term in excess of one year, that is a

 9    felony offense.  Do you understand those elements?

10    A    Yes, ma'am.

11          THE COURT:  I need to find whether or not

12    there is a factual basis for the plea.  How would like

13    to proceed?

14          MR. COOKE:  Your Honor, at trial, the

15    Government would have shown that on the date as

16    specified in the indictment, that is on or about March

17    28, 2005 in Geneva County within the Middle District of

18    Alabama, Mr. Moody, having been convicted back on August

19    21st of 2001 with a felony, that is two counts of

20    unlawful possession of a controlled substance in the

21    Circuit Court of Covington County, Alabama, possessed

22    the handgun as specified, the Davis Industries model P

23    thirty-two, a thirty-two caliber semiautomatic pistol.

24          Basically we would have shown that officers

25    there near the defendant's  home were looking for an
```

```
 1   escapee, and in doing so they were approached by this

 2   defendant --

 3                THE COURT:  Let me stop you.  Really we need

 4   to get him to answer your questions with regard to this

 5   offense to establish the factual basis.  So if you

 6   would, let's ask him questions, or his counsel can do

 7   that.  And let's see if he agrees to what you're saying.

 8                MR. COOKE:  Okay.  Mr. Moody, do you agree

 9   that back on March 28 of 2005 that you were in Geneva

10   County within the Middle District of Alabama?

11   A    Yes, sir.

12                MR. COOKE:  And at that time did you have a

13   conversation with certain law enforcement officers near

14   your home?

15   A    Yes, sir.  They stopped me.

16                MR. COOKE:  And when you spoke with them, did

17   you in fact possess the handgun that's specified in the

18   indictment?  You've heard me mention that to the judge,

19   the Davis Industries model D 32, thirty-two caliber

20   semiautomatic pistol?

21                MS. PRINCE:  I think the better way to put

22   that would be at the time that you were searched by

23   Deputy Block at the scene on March 28, did the deputy in

24   fact find a handgun on your person?

25   A    It's hard for me to answer that honestly.  You know
```

```
1   the situation I'm in.

2           MS. PRINCE:  Yes, I know.

3   A    Well I never seen the gun.

4           MS. PRINCE:  Okay, but when you were searched

5   did the deputy find a handgun in your belt?  Yes, or no?

6   A    I had a telephone in my hand, ma'am.

7           THE COURT:  I can't hear you.

8           Mr. Moody, you don't have to plead guilty.

9   You can proceed to trial.  So if you don't believe that

10  you possessed, and knowingly possessed a firearm in or

11  affecting interstate commerce, then you don't have to

12  say that you did.

13          Let me ask you the question again, and it's up

14  to you as to what your answer is.  Did you knowingly

15  possess a firearms, specifically the firearm that's

16  charged in the indictment, on the date in question,

17  which was March 28, 2005 in Geneva County?

18  A    Ma'am, could I ask my lawyer a question on that?

19          THE COURT:  Yes, you may.  Take a moment and

20  speak with your lawyer.

21          (Whereupon, the defendant conferred with Ms.

22  Prince off the record and out of the hearing of the

23  other courtroom participants.)

24          THE COURT:  Do you want to put the question

25  again?
```

```
 1              MS. PRINCE:  Yes.

 2              THE COURT:  All right.  Go ahead.

 3              MS. PRINCE:  Mr. Moody, the question is, do

 4  you agree that when Deputy Lock searched you, he found a

 5  handgun on your person?

 6  A    Yes, ma'am.

 7              THE COURT:  All right.  Y'all go ahead and

 8  proceed, if you wish.

 9              MS. PRINCE:  I believe we've already done the

10  Middle District.

11              MR. COOKE:  We've already covered this is in

12  the Middle District of Alabama.

13              MS. PRINCE:  The other element, as far as

14  interstate commerce, we would stipulate that -- he would

15  be able to stipulate that this gun traveled within

16  interstate commerce.

17              THE COURT:  All right.  Mr. Moody, do you

18  agree with that?

19  A    Yes, ma'am.

20              MR. COOKE:  One other thing, Your Honor.

21              Mr. Moody, do you agree that on that date,

22  that you had previously been convicted of a felony in

23  the Circuit Court of Covington County, that is two

24  counts of possession of a controlled substance?

25  A    Yes, sir.
```

```
 1              THE COURT:  You understand that those were
 2   felony convictions?
 3   A    Yes, ma'am.
 4              THE COURT:  Okay.  Anything else?
 5              MS. PRINCE:  I'm satisfied.
 6              MR. COOKE:  Nothing further from the
 7   Government, Your Honor.
 8              Oh, there is one thing.  It's covered in the
 9   plea agreement, but we went over the maximum penalty and
10   we just should make it clear that should probation
11   determine in his background check that he is an armed
12   career offender, then the maximum penalty would be not
13   less than fifteen years nor more than life.  And we have
14   addressed that and contemplated in the plea agreement by
15   stating that the sentence shall not exceed one hundred
16   and eighty months.
17              THE COURT:  Would that alter the period of
18   supervised release, as well?
19              MR. COOKE:  No, Your Honor.
20              THE PROBATION OFFICER:  Excuse me, it would.
21   I'm sorry.  It would be five years instead of three.
22              MR. COOKE:  I stand corrected.
23              THE COURT:  All right.  Let me just go over
24   that.
25              Mr. Moody, do you understand that if you're
```

```
 1   determined to be an armed career criminal, the maximum

 2   punishment would increase to no more than --

 3              Is the fine the same?

 4              MS. PRINCE:  Fifteen to life.

 5              MR. COOKE:  I believe the fine is the same of

 6   two hundred and fifty thousand dollars.

 7              THE COURT:  No more than two hundred and fifty

 8   thousand dollars fine, no more than fifteen years -- I'm

 9   sorry, not less than fifteen years imprisonment and no

10   more than life imprisonment, no more than five years

11   supervised release, a one hundred dollar assessment fee,

12   and you might be asked to make restitution to any victim

13   of the offense.  Do you understand the maximum

14   punishment if you were determined to be an armed career

15   criminal?

16   A    Yes, ma'am.

17              THE COURT:  Any other questions?

18              MR. COOKE:  Nothing from the Government, Your

19   Honor.

20              MS. PRINCE:  Nothing from the defendant.

21              THE COURT:  Mr. Moody?

22              THE DEFENDANT:  No, ma'am.

23              THE COURT:  How do you now plead to the charge

24   against you in the indictment, guilty or not guilty?

25   A    Guilty.
```

```
 1              THE COURT:  It is the finding of the Court in
 2    the case of United States vs. Mickey Lee Moody, that the
 3    defendant is fully competent and capable of entering an
 4    informed plea, that the defendant is aware of the nature
 5    of the charges and the consequences of the plea, and
 6    that the plea of guilty is a knowing and voluntary plea
 7    supported by an independent basis in fact containing
 8    each of the essential elements of the offense.  The plea
 9    is therefore accepted, and the defendant is now adjudged
10    guilty of that offense.
11              A written presentence report will be prepared
12    by the probation office to assist the court in
13    sentencing.  You'll be asked to giving information for
14    the report, and your attorney may be present for that if
15    you wish.  The Court will permit you and your counsel to
16    read the presentence report and file any objections to
17    the report before the sentencing hearing, and you and
18    your counsel will have the opportunity to speak on your
19    behalf at the sentencing hearing.
20              The date for your sentencing will be set by
21    order.  And until that time I will remand you to the
22    custody of the United States marshal.
23              Anything further?
24              MR. COOKE:  Nothing from the Government, Your
25    Honor.
```

1          THE COURT:  Anything else from the Defense?

2          MS. PRINCE:  Nothing further.

3          COURTROOM DEPUTY CLERK:  Court is recessed.

4          (Whereupon, the proceedings were concluded.)

5                    * * * * * * * * * *

6

7

8              **COURT REPORTER'S CERTIFICATE**

9

10         I certify that the foregoing is a correct

11    transcript from the record of proceedings in the

12    above-entitled matter as prepared by me to the best of

13    my ability.

14

15         I further certify that I am not related to any

16    of the parties hereto, nor their counsel, and I have no

17    interest in the outcome of said cause.

18

19         Dated this 21st day of November 2006.

20

21              /s/  Mitchell P. Reisner
                **MITCHELL  P.  REISNER,  CM, CRR,**
22              Official US Dist. Court Reporter
                Registered Professional Reporter
23              Certified   Real-Time   Reporter

24

25

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) CASE NO. CR NO: 1:05-CR-195-T |
| | ) |
| MICKEY LEE MOODY, | ) |
| Defendant, | ) |

### MOTION TO WITHDRAW AS COUNEL OF RECORD AND FOR
### APPOINTMNET OF CJA PANEL ATTORNEY

**COMES NOW** the undersigned counsel, Maryanne Melko Prince, and files this Motion to

Withdraw as Counsel of Record and for Appointment of CJA Panel Attorney on behalf the

defendant Mickey Lee Moody. In support of this Motion, Counsel states the following:

1. Undersigned Counsel is closing her federal practice on May 31, 2006 in order to relocate

with her spouse to the State of Maine.

2. Undersigned counsel requests on behalf of the defendant that Middle District of Alabama

CJA Panel Attorney John M. Poti be appointed to represent him in all further proceedings in this

matter.

3. Counsel for the defendant has discussed the above situation with Panel Attorney Poti who

has indicated that he is willing to accept appointment to this matter and does not have a conflict of

interest.

4. Mr. Poti's mailing address and telephone is:

John M. Poti, Esq.
696 Silver Hills Drive, Suite 107
Prattville, AL 36066
Phone: 334-361-3535



AO88B-C
GOVERNMENT
EXHIBIT

CASE
NO.

EXHIBIT
NO.

**WHEREFORE,** undersigned counsel prays that Maryanne M. Prince be permitted to withdraw from representation of Mickey Lee Moody and CJA Panel attorney John M. Poti be appointed to represent him.

**RESPECTFULLY SUBMITTED** this 25th day of May, 2006.

/s/ Maryanne M. Prince
MARYANNE M. PRINCE
Alabama Bar No.: ASB-6515-E39M
Attorney for Defendant
631 South Perry Street
Montgomery, AL 36104
Telephone: (334)-262-1006
Fax:    (334)-262-1066
E-Mail: maprince@knology.net

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing Motion upon the following, by electronic mail via CM/ECF on the 25th day of May, 2006.

Karl David Cooke, Jr., AUSA
U. S. Attorney's Office
Post Office Box 197
Montgomery, AL 36101-0197

John Poti, Esq.
Suite 107
696 Silver Hills Drive
Prattville, AL 36066

Mickey Lee Moody
Montgomery City Jail
PO Box 159
Montgomery, AL 36101-0159

/S/ Maryanne M. Prince
Maryanne M. Prince
ASB-6515-E39M
Attorney for Defendant

1                   IN THE UNITED STATES DISTRICT COURT

2                   FOR THE MIDDLE DISTRICT OF ALABAMA

3                           SOUTHERN DIVISION

4

5     UNITED STATES OF AMERICA

6          vs.                       CASE NO:   1:05cr195-LSC

7     MICKEY LEE MOODY,

8             Defendant.

9

10

11

12                   * * * * * * * * * * *

13                      SENTENCING HEARING

14                   * * * * * * * * * * *

15          BEFORE THE HONORABLE L. SCOTT COOGLER, UNITED STATES

16    DISTRICT JUDGE, at Montgomery, Alabama, on Thursday, September

17    7, 2006, commencing at 1:29 p.m.

18    APPEARANCES:

19    FOR THE GOVERNMENT:        Mr. Karl David Cooke, Jr.
                                 Mr. John T. Harmon
20                               Assistant United States Attorneys
                                 OFFICE OF THE UNITED STATES ATTORNEY
21                               One Court Square, Suite 201
                                 Montgomery, Alabama  36104
22
      FOR THE DEFENDANT:         Mr. John M. Poti, Attorney at Law
23                               696 Silver Hills Drive, Suite 107
                                 Prattville, Alabama  36066
24
                      Proceedings reported stenographically;
25                      transcript produced by computer.

GOVERNMENT
EXHIBIT

CASE
NO.

EXHIBIT
NO.      5

```
1       (The following proceedings were heard before the Honorable

2       L. Scott Coogler, United States District Judge, at

3       Montgomery, Alabama, on Thursday, September 7, 2006,

4       commencing at 1:29 p.m.:)

5            THE COURT:  This is United States of America versus

6   Mickey Lee Moody, Case Number 05-195.  We're here for the

7   purposes of sentencing the defendant.

8            Is the government ready to proceed?

9            MR. COOKE:  Yes, Your Honor.

10           THE COURT:  Is the defense ready to proceed?

11           MR. POTI:  Yes, sir.

12           THE COURT:  Have you and your client had at least 35

13  days to review the presentence report?

14           MR. POTI:  Yes, we have, sir.

15           THE COURT:  All right.  And I note there are no

16  objections to the presentence report; is that correct?

17           MR. POTI:  No, sir.  There is an objection.

18           THE COURT:  All right.  My copy from the probation

19  office says the defendant and defendant's counsel reviewed the

20  presentence report, and there are no material factual

21  inaccuracies.  What your objection?

22           PROBATION OFFICER:  Your Honor, when we came to

23  sentencing on the original sentencing date, it was at that time

24  that Mr. Poti informed the Court that he would be posing an

25  objection.  We did receive the objection on last week; however,
```

1    we just thought that we'd just voice it out in open court.

2            THE COURT:  Okay.  What's your objection?

3            MR. POTI:  The objection, sir, is specifically to

4    paragraphs 22 and 33 of the presentence report in which a

5    September of 1982 third-degree burglary charge and conviction

6    out of Geneva County, Alabama, is being used as a qualifying

7    conviction as a crime of violence against my client to enhance

8    his sentence as an armed career criminal.  What we'd like to

9    point out is the sentencing guideline in Section 4B1.2, in the

10   application note, it specifically says that burglary of a

11   dwelling is a crime of violence.  If you look in the presentence

12   report, this burglary was of a drugstore.  There was no

13   aggravating factors.  There was no weapons used, no injuries, no

14   threats of violence or actual violence.

15           THE COURT:  Do you have the guidelines section?

16           PROBATION OFFICER:  Your Honor, the guideline does

17   indicate that a crime of violence has to have certain parameters

18   in order to make itself -- to bring it into being a crime of

19   violence.  However, for that particular offense, we're not

20   relying on the guidelines to make that assessment.  We're

21   relying on the statute, which would be 18 U.S.C. 924 --

22           THE COURT:  (e).

23           PROBATION OFFICER:  -- (2)(B)(ii), which indicates that

24   the term "violent felony" means any crime punishable by

25   imprisonment for a term exceeding one year, or act involving the

1   use or carrying of a firearm, knife, or destructive device that

2   would be punishable by imprisonment for such term if committed

3   by an adult, that is burglary, arson, or extortion, involves the

4   use of explosives --

5           Basically, Your Honor, it does not give a degree of

6   burglary or does not specify that it has to be a dwelling in

7   this case.  I do have a case from the Eleventh Circuit, *U.S. v.*

8   *James*.

9           THE COURT:  Let me see that and your code book for a

10  second.

11          Y'all can sit down.

12          PROBATION OFFICER:  This is the case.  That's the last

13  paragraph of the actual case.

14     (Brief pause)

15          THE COURT:  Okay.  It would appear to me that the

16  defendant falls under the category of 18 U.S.C., Section 924(e),

17  as an armed career criminal, under that enhancement.  That

18  enhancement makes his punishment a minimum of 15 years.  If

19  that's the case, then the guidelines would automatically

20  increase to the 15 years, which would be 180 months, regardless

21  of this particular provision under the guidelines.

22          Is that not correct?

23          PROBATION OFFICER:  That's correct, Your Honor.

24          THE COURT:  So 180 months -- isn't that 15 years?

25          PROBATION OFFICER:  That's correct, Your Honor.

1      THE COURT:  -- would be the guideline range under

2  that.  His plea agreement is not to be sentenced to any more

3  than 180 months.  And if I sentence him to more than 180 months,

4  under the plea agreement, he has the right to withdraw his

5  guilty plea.

6      MR. POTI:  Yes, sir.

7      THE COURT:  Okay?  So it would appear to me that under

8  the application of the statute, the 180 months would be the

9  guideline range if you are correct in what you say about the

10  guidelines.  Does that make sense, what I'm saying?

11      MR. POTI:  No, sir.

12      THE COURT:  If you were correct and it should -- that

13  particular point in paragraph 22 -- excuse me.  Paragraph 21,

14  the Chapter 4 enhancements.  If that section did not apply so

15  that his guideline range at that point is reduced --

16      MR. POTI:  Yes, sir.

17      THE COURT:  -- instead of being 33 as a level at that

18  point, it goes back to 24.

19      MR. POTI:  Correct.

20      THE COURT:  And then it takes away three to get to 21.

21  Then still, when you apply the Armed Career Criminal Act, the

22  end result would be his guideline range would be 180 months, not

23  whatever it ends up being by calculating those numbers.

24      MR. POTI:  I see what you're saying, Judge.  I think

25  the Eleventh Circuit has addressed that.  In *United States*

 1  *versus Spell*, Eleventh Circuit case from 1995, they looked at

 2  what constitutes a crime of violence.  And they said that

 3  burglary of a dwelling is.  And in the *Spell* --

 4        THE COURT:  That's in the calculation of the

 5  guidelines.  But the *Spell* case was not dealing with Armed

 6  Career Criminal Act, was it?

 7        MR. POTI:  I believe it --

 8        THE COURT:  Do you want to give me that cite?  Do you

 9  have it?

10        MR. POTI:  Well, I have the case here.

11        THE COURT:  Do you have an extra copy of it, or do you

12  want to just give me the cite?

13        MR. POTI:  I have an extra copy of it.  Or else you

14  just want the cite?

15        THE COURT:  Yes.  Just bring it to me.

16        MR. POTI:  They were looking at it as a career offender

17  there.  And in the *Spell* case, it was a Florida conviction, was

18  the state conviction, and it was for burglary of a structure.

19  And what the Eleventh Circuit said there was that burglary of a

20  dwelling is a crime of violence; however, if it's not certain,

21  then the Court is empowered to look beyond just what the

22  indictment or what the information says to see what the

23  underlying elements of the crime were.

24        THE COURT:  All right.  But hang on.  This is a career

25  offender.  I -- this is what you're talking about in the

1  guidelines.  In other words, following the definition, if the
2  paragraph 20 is changed, is taken out completely, then the level
3  would be 24 there.  Then you would -- has there been acceptance
4  of responsibility already taken out at that point?
5      MR. POTI:  No.  It would go down to 21.
6      THE COURT:  So it would go to 21.  Then you would take
7  his criminal history.  What's his criminal history?
8      MR. POTI:  VI.
9      THE COURT:  VI at a level 21 would initially indicate a
10  guideline range of what?
11     PROBATION OFFICER:  Seventy-seven to 96 months.
12     THE COURT:  Okay.  But then because the statute which
13  is applicable to him is an armed career criminal enhancement,
14  not career offender under the guidelines, but the statutory
15  range of punishment has a minimum punishment that he can get of
16  180 months, then the end result of the guideline range would not
17  be the 70 some-odd months to whatever the probation officer just
18  said.  It will become 180 months under the application of the
19  guidelines.
20     Am I missing something, Probation?
21     PROBATION OFFICER:  No, Your Honor.  That's correct.
22  And I think -- I guess the emphasis is just put on that at
23  paragraph 21, the guidelines are no longer in effect at that
24  point.  We are relying specifically on the statute.
25     THE COURT:  Do you have the guideline -- a set --

1    manual over there, guideline manual?  Normally I have all this

2    worked out ahead of time, but I didn't know that you objected to

3    this paragraph.  So I apologize that I have not refreshed my

4    memory on all this.

5            All right.  Do you have your manual there, guideline

6    manual, John?

7            MR. POTI:  I didn't bring it with me, Judge.

8            THE COURT:  All right.  Come up here.  Government,

9    Probation, anybody that wants to come up here, come up here.

10           All right.  Here is 4B1.4(a).  And if a person is

11   subject to the enhancement as being an Armed Career Criminal Act

12   under 18 U.S.C., Section 924(e), then their punishment goes up

13   to 33.  Now, it would be 34, but that doesn't apply to him, so

14   it would be 33.

15           It does not -- it's not the same thing as career

16   offender, which has a different definition for violent -- do you

17   follow what I'm saying?

18           MR. POTI:  Yes, sir.

19           THE COURT:  Now -- unless you've got some argument that

20   the enhancement doesn't apply, 18 U.S.C., Section 924(e), that

21   the statute doesn't apply to your client.  If do, I want to

22   certainly hear that.  But I would assume, based on my review of

23   your plea agreement, that you recognized that he was going to

24   have an Armed Career Criminal Act enhancement anyway.

25           MR. POTI:  Well, actually, Judge, I wasn't the attorney

```
 1   of record at that time.  Ms. Maryanne Prince was the attorney
 2   who negotiated the plea agreement.  She has subsequently shut
 3   down her office here in Montgomery and moved, and I picked up
 4   the case after all of that.
 5           THE COURT:  Do you know of any argument that your
 6   client is not an armed career criminal pursuant to the
 7   definitions in that statute?
 8           MR. POTI:  Well, the statute says that burglary would
 9   fall under there.
10           THE COURT:  Right.
11           MR. POTI:  However, if you look at Alabama statutes and
12   what defines burglary, Alabama does not necessarily say that
13   burglary in the third degree is a crime of violence.  Very
14   specifically, under Alabama Code Section 13A-11-70, it defines a
15   crime of violence as any of the following crimes or an attempt
16   to commit them.  Then it gives a laundry list, and one of those
17   says burglary.  However, that definition is copied and was not
18   changed from the 1940 code statutes to the rewrite in 1975 and
19   subsequent amendments.  However, the Alabama Criminal Code was
20   amended.  Under the 1940 -- under the 1940 code, there was no
21   burglary, third degree; so that could not have applied to
22   burglary in the third degree, as intended by the original
23   Legislature.  That issue was addressed under -- in Alabama under
24   Ex Parte Johnson.  It's a 1993 case.  And it says that very
25   thing, that under the Alabama Code in 1940, there was no offense
```

1  of burglary in the third degree.  And the presentation of the

2  fact of this conviction really shouldn't be used to enhance a

3  sentence, that the Court should look beyond that to see if the

4  elements that would make it a crime of violence are present.

5      Under Alabama statute, there's three levels now of

6  burglary, burglary in the first degree, which is -- which is

7  defined as of a dwelling.  Burglary in the second degree has

8  other factors that have to be involved to make it burglary in

9  the second degree.  Either a weapon is used or there was injury

10 to a person or a threat of injury.  Burglary in the third

11 degree, as defined under the Alabama statute, is a person

12 commits the burglary of -- crime of burglary in the third degree

13 if he knowingly enters or remains unlawfully in a building with

14 the intent to commit a crime therein.  It was not a dwelling.

15 There is no definition under Alabama law that it has to be a

16 dwelling for third degree, and there are no aggravating factors.

17      THE COURT:  Well, what's the government's position on

18 this?

19      MR. COOKE:  I believe counsel is still articulating

20 arguments that would fall under 4B1.2 in the guidelines and

21 those type of enhancements as opposed to whether or not it falls

22 under 924(e).  And that's the real question.  And there's

23 nothing about -- there's nothing about his argument or the facts

24 he's presented that except this conviction from being a burglary

25 under 924(e).

1     THE COURT:  Well, again, it, I think, clearly is -- the

2  enhancement, armed career criminal enhancement, applies.  Thus,

3  the adjustment to the offense level found at paragraph 20 is

4  appropriate.  I'm going to overrule the objection, although I

5  think I understand your arguments.  And I just think that the

6  clear reading of the federal statute, 18 U.S.C., Section 924(e),

7  provides that a burglary -- and I -- there's another provision

8  on there about the punishment range, but what we're talking

9  about is whether or not it's a burglary -- that it's a

10  burglary.  And burglary of a building is still a burglary.

11     And I do recognize that Alabama separates its

12  burglaries from burglary in the first degree, burglary of a

13  residence, carrying a firearm to commit a felony therein, or

14  however they break them, and then burglary in the second degree

15  and burglary in the third degree being of a building or -- I

16  don't recall right off exactly what the definitions -- complete

17  definition of burglary in the third degree.  But I believe that

18  burglary in the third degree, burglary of a drugstore, I think

19  is what you said your client --

20     MR. POTI:  Yes, sir.

21     THE COURT:  -- was convicted of, is, under the federal

22  statute, a burglary and would still be subject to that.

23     Do you have any further objections to the presentence

24  report?

25     MR. POTI:  Not an objection.  However, some information

1    as to Mr. Moody's health has come to light since our last

2    meeting.  And I conveyed this to Mr. -- Mr. Lee at Probation,

3    also.

4             THE COURT:  All right.  Well, let's take it one step at

5    a time, then.  That would get on to the end where we're talking

6    about sentencing.

7             Does the government have any objections to the

8    presentence report?

9             MR. COOKE:  None, Your Honor.

10            THE COURT:  This Court, having ruled on all objections,

11   the Court adopts the factual statements contained in the

12   presentence report and makes specific findings that the

13   guideline offense level is 30, the criminal history category is

14   Roman numeral six, and the advisory guideline imprisonment range

15   is from 180 months to 210 months.  Further, the supervised

16   release period is from two years to three years and the fine

17   range is from 15,000 to $150,000.

18            Let me state this for the record.  I recognize that the

19   guidelines are advisable.  The guideline range is not mandatory

20   anymore but is an important factor that I am to consider, along

21   with the other factors in 18 U.S.C., Section 3553, in

22   determining what is a reasonable and appropriate sentence.  My

23   job will be to calculate and determine the extent of the

24   sentence that will accomplish and give the defendant just the

25   right amount of punishment or to calculate the sentence such

1   that it accomplishes the goals set forth in 18 U.S.C., Section
2   3553, exactly, not any more nor any less than that amount of
3   punishment which is necessary.  Restitution is not an issue in
4   this case.
5          Do you have anything to say in mitigation or otherwise
6   before I pronounce the sentence of law upon your client?
7          MR. POTI:  Is this where you'd like me to bring up the
8   other issue?
9          THE COURT:  Yes.
10         MR. POTI:  Mr. Moody has been under the care of
11  Dr. Mendez at the city jail.  And in the last few weeks, it has
12  been determined that he has a spot or a tumor on his left lung.
13  The status is unknown in that additional tests are being
14  required.  Blood tests also indicate thyroid and liver
15  problems.  And I bring that to the Court's attention because
16  it's not in the presentence report, but those are important
17  items to note so that he can be sent to the appropriate facility
18  to make sure that he receives the medical care that he needs.
19         THE COURT:  Okay.  And I know that once he's in the
20  prison system, that they will evaluate him and they will -- that
21  will accompany him.  His medical records will obviously
22  accompany him, and he will be evaluated and put at the
23  appropriate facility.
24         All right.  Does the government have anything -- well,
25  Mr. Moody, this is your opportunity to say anything that you

```
 1   want to say in mitigation or otherwise before I pronounce the

 2   sentence of law upon you.

 3              THE DEFENDANT:  Yes, sir.  I asked Judge Fleming when I

 4   got arrested for this case.  I started getting out of trouble in

 5   1966.  I never -- I've never had any help.  I mean this is --

 6   this is true.  And I received some help, though, 18 months ago

 7   at Bullock Correctional Facility and all and at Restoration

 8   Chapel.  And deep in my heart and all, I know that I'm not an

 9   armed career criminal.  I've had some problems in my life.  I've

10   had a drug problem.  I'm 18 months free of drugs.  I have an

11   11-year-old son I've never been able to see play ball or

12   anything; football, you know, this year.  I'd like the Court to

13   consider these things and all, because my health, since -- since

14   the last time I came in here, has really went down.  The

15   doctor's got me on three different medications, and I'd like to

16   have a little bit of time with my son before I die.  That's it.

17              THE COURT:  Okay.  Does the government have anything it

18   wants to say?

19              MR. COOKE:  No, Your Honor.  We'd just ask that the

20   Court follow the plea agreement.

21              THE COURT:  All right.  I find the defendant does not

22   have the ability to pay a fine, so I'm waiving any fine in this

23   case.

24              I have considered the factors in 18 U.S.C., Section

25   3553, including the nature and circumstances of the offense and
```

1  the history and characteristics of the defendant, particularly

2  the defendant's prior history, prior criminal history, and I am

3  going to go along with the plea agreement that you've entered

4  into.  It gives you the minimum sentence that you can possibly

5  get in this case.  Armed career criminal enhancement is a

6  description of the convictions, basically, that you have in the

7  past.  You're the only one who knows what's in your heart; and,

8  you know, certainly any individual can turn their life around.

9  They might be in prison while they're doing it, but they can

10  still turn their life around.  The law provides that an

11  individual who gets a conviction like you have who has had the

12  prior convictions that you have had, the sentence -- the minimum

13  sentence that you can get is 180 months.  The government entered

14  into a plea agreement that allowed you to get that, and I think

15  that is appropriate in your case to give you the minimum

16  sentence that you can get.  And that's what I will do.

17          Pursuant to the Sentencing Reform Act of 1984, it's the

18  judgment of this Court that you be committed to the custody of

19  the Bureau of Prisons to be imprisoned for a term of 180 months

20  as to count one.  And I order that you be placed on supervised

21  release for a period of three years once you complete your

22  prison sentence.  It is further ordered that you pay the United

23  States a special assessment fee of $100.  The assessment fee is

24  due immediately.

25          There is a forfeiture count that is made part of the

 1   plea agreement and part of the indictment.

 2          MR. HARMON:  That's correct, Your Honor.

 3          THE COURT:  And is the government, as they're standing

 4   on their feet, I assume you're moving that I make a final order

 5   of forfeiture in this case?

 6          MR. HARMON:  That is correct, Your Honor.  The United

 7   States earlier filed a motion for a final order of forfeiture

 8   and an attached final order of forfeiture.  We'd ask that the

 9   Court execute the final order, make the forfeiture part of the

10   oral pronouncement of sentence, and direct the clerk to include

11   the forfeiture on the written judgment.

12          THE COURT:  I hereby do that.

13          Now, when you're released from prison, while you're on

14   supervised release, you will comply with the standard and

15   mandatory conditions of supervised release of record in this

16   Court.  You will also participate in drug testing and drug

17   treatment.  You shall contribute to the cost of such treatment

18   based on your ability to pay it or any availability of

19   third-party payments.  You will participate in mental health

20   treatment programs.  You shall contribute to the cost of such

21   programs based on your ability to pay or the availability of

22   third-party payments.  Both of those, the drug treatment and the

23   mental health treatment, will be under the administrative

24   supervision of the probation office of this district.

25          You shall submit to the search of your person,

```
 1   residence, office, or vehicle pursuant to the search policies of
 2   this Court.  You shall cooperate in the collection of DNA.
 3          Your family lives in what part of the state?
 4          THE DEFENDANT:  South Alabama.  Geneva County.
 5          THE COURT:  I assume that you want me to ask that you
 6   be housed as close to them as possible?
 7          THE DEFENDANT:  Yes, sir, I sure would.
 8          THE COURT:  I'll ask that you be housed as close to
 9   Geneva County as possible.
10          Is there any objection to the -- from any party as to
11   the findings of facts, the calculations of sentence, or the
12   manner in which the sentence was pronounced or imposed other
13   than previously stated for the record?
14          Government?
15          MR. COOKE:  None, Your Honor.
16          THE COURT:  Defense?
17          MR. POTI:  Nothing other than what was already stated,
18   Judge.
19          THE COURT:  Assessment fee of $100.  If I didn't say
20   that, it is ordered that you pay the assessment fee of $100.  I
21   thought I did; but if I didn't, there it is again.  You are to
22   pay the United States a special assessment fee of $100.
23          All right.  Are there any other counts to be
24   dismissed?  Was there just count one and then the forfeiture
25   count?
```

1          MR. COOKE:  I don't believe so.

2          MR. POTI:  There's just one count, Judge.

3          MR. COOKE:  That's just it, Your Honor.

4          THE COURT:  All right.  You have the right to appeal

5    the sentence imposed if you believe the sentence is in violation

6    of the law.  However, you may have waived some or all of your

7    rights to appeal as part of your agreement.  If you did in fact

8    waive some or all of your rights to appeal as part of your plea

9    agreement, such waivers are generally found to be enforceable.

10   However, if you believe that it's unenforceable, you can present

11   that theory to the appropriate appellate court.  That's if you,

12   in fact, have waived anything in your plea agreement.

13   Generally, though, or with few exceptions, I should say, any

14   notice of appeal must be filed within ten days of judgment being

15   entered in your case.  If you do not have the ability to pay the

16   cost of appeal, you may apply for leave to appeal *in forma*

17   *pauperis* and for the appointment of counsel.  If granted, the

18   clerk of the court will assist you in preparing and filing your

19   notice of appeal.

20          Do you have any questions, Mr. Moody?

21          THE DEFENDANT:  No.

22          THE COURT:  Any questions of counsel, either side?

23          MR. POTI:  No, sir.

24          MR. COOKE:  No, Your Honor.

25          THE COURT:  All right.  Have a good day.

1        (Proceedings concluded at 1:55 p.m.)

2                        * * * * * * * * * * *

3                    COURT REPORTER'S CERTIFICATE

4            I certify that the foregoing is a correct transcript

5     from the record of proceedings in the above-entitled matter.

6            This 4th day of October, 2006.

7

8                                    /s/ Risa L. Entrekin
                                     Registered Diplomate Reporter
9                                    Certified Realtime Reporter
                                     Official Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

AO 245 S (Rev. 1/98)(N.D.Ala. rev.) Sheet 1 - Judgment in a Criminal Case

# UNITED STATES DISTRICT COURT
## Middle District of Alabama

UNITED STATES OF AMERICA

    v.                                           Case Number 1:05-CR-0195-LSC

MICKEY LEE MOODY                            USM Number 09427-002
    Defendant.

## JUDGMENT IN A CRIMINAL CASE
### (For Offenses Committed On or After November 1, 1987)

    The defendant, MICKEY LEE MOODY, was represented by John M. Poti.

    The defendant pleaded guilty to count 1. Accordingly, the defendant is adjudged guilty of the following count, involving the indicated offense:

| Title & Section | Nature of Offense | Offense Ended | Count Number(s) |
|---|---|---|---|
| 18 USC § 922(g)(1) and 924(e) | Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year | 3/28/2005 | 1 |

    As pronounced on September 7, 2006, the defendant is sentenced as provided in pages 2 through 6 of this Judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

    It is ordered that the defendant shall pay to the United States a special assessment of $100.00, for count 1, which shall be due immediately and payable to the Clerk of Court, U.S. District Court, Middle District of Alabama, P.O. Box 711, Montgomery, AL 36104.

    It is further ordered that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this Judgment are fully paid.

    Done this 8th day of September 2006.

                                 L. SCOTT COOGLER
                   UNITED STATES DISTRICT JUDGE
                          124019



AO388-C
GOVERNMENT
EXHIBIT

CASE
NO.

EXHIBIT
NO. 1

AO 245 S (Rev. 1/98)(N.D.Ala. rev.) Sheet 2 - Imprisonment

Judgment--Page 2 of 6

Defendant: MICKEY LEE MOODY
Case Number: 1:05-CR-0195-LSC

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of ONE HUNDRED EIGHTY (180) months as to Count 1.

The Court recommends to the Bureau of Prisons the defendant be housed as close as possible to his family in Geneva County, Alabama.

The defendant is remanded to the custody of the United States Marshal.

## RETURN

I have executed this Judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____ at _____
_____, with a certified copy of this Judgment.

_____
United States Marshal

By _____
Deputy Marshal

AO 245 S (Rev. 1/98)(N.D.Ala. rev.) Sheet 3 - Supervised Release

Judgment--Page 3 of 6

Defendant: MICKEY LEE MOODY
Case Number: 1:05-CR-0195-LSC

### SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of 36 months. The Probation Office shall provide the defendant with a copy of the standard conditions and any special conditions of supervised release.

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐    The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

✔    The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

✔    The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐    The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the student, as directed by the probation officer. (Check, if applicable.)

☐    The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

### STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer

2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)    the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)    the defendant shall support his or her dependents and meet other family responsibilities;

5)    the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)    the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)    the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)    the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

AO 245 S (Rev. 1/98)(N.D.Ala. rev.) Sheet 3 - Continuation of Standard Conditions of Supervised Release

Judgment--Page 4 of 6

Defendant: MICKEY LEE MOODY
Case Number: 1:05-CR-0195-LSC

## CONTINUATION OF STANDARD CONDITIONS OF SUPERVISED RELEASE

9)  the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)  the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)  the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)  the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)  as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245 S (Rev. 1/98)(N.D.Ala. rev.) Sheet 3 (cont'd) - Supervised Release

Judgment--Page 5 of 6

Defendant:  MICKEY LEE MOODY
Case Number: 1:05-CR-0195-LSC

### SPECIAL CONDITIONS OF SUPERVISION

While the defendant is on supervised release pursuant to this Judgment:

1)  The defendant shall participate, under the administrative supervision of the probation officer, in mental health rehabilitation programs. The defendant shall contribute to the cost of mental health treatment unless the probation officer determines that the defendant does not have the ability to do so or the availability of third-party payments..

2)  The defendant shall submit to a search of his person, residence, office or vehicle pursuant to the search policy of this court.

3)  The defendant shall participate, under the administrative supervision of the probation officer,  in a drug testing and drug treatment program.  The defendant shall contribute to the cost of any treatment based on ability to pay and the availability of third-party payments.

4)  The defendant shall cooperate in the collection of DNA.

AO 245 S (Rev. 1/98)(N.D.Ala. rev.) Sheet 6 - Restitution and Forfeiture

Judgment--Page 6 of 6

Defendant: MICKEY LEE MOODY
Case Number: 1:05-CR-0195-LSC

## RESTITUTION AND FORFEITURE

### FORFEITURE

The defendant is ordered to forfeit the following property to the United States:

One Davis Industries, Model D-32, .32 semi-automatic pistol, Serial Number 100873

RECEIVED

2006 NOV 15  P 12: 34

CASE NO. 06-15114-CC

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,

APPELLEE,

v.

MICKY LEE MOODY,

APPELLANT.

BRIEF OF THE APPELLANT MICKY LEE MOODY

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION
CASE NO. CR-05-00195-S

JOHN M. POTI
Attorney for Mickey Lee Moody
696 N. Silver Hills Dr., STE 102
Prattville, Alabama 36066-6184
TEL: (334) 361-3535
FAX: 1-866-780-9012

AO88-C
GOVERNMENT
EXHIBIT

CASE
NO.

EXHIBIT
NO.        U

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

United States v. Mickey Lee Moody
Case No. 06-15114-CC

The undersigned counsel of record for Defendant-Appellant Mickey Lee Moody, in compliance with <u>Fed. R. App. P. 26.1</u>, and <u>11th Cir. R. 26.1</u>, certifies that the following listed persons and parties have an interest in the outcome of this case:

1. Leura Garrett Canary, United States Attorney

2. Hon. L. Scott Coogler, United States District Judge

3. Karl David Cooke, Jr., Assistant United States Attorney

4. Christine A. Freeman, Previous Counsel for Appellant

5. Robin C. Konrad, Previous Counsel for Appellant

6. Bruce Maddox, Previous Counsel for Appellant

7. Mickey Lee Moody, Defendant-Appellant

8. John M. Poti, Counsel for Appellant

9. Maryanne Prince, Previous Counsel for Appellant

10. Hon. Susan R. Walker, United States Magistrate Judge

C

## STATEMENT REGARDING ORAL ARGUMENT

The defendant, Mickey Lee Moody, submits that the issues raised on this appeal can readily be resolved on the basis of the record and the written briefs filed by the parties. Therefore, oral argument is neither requested nor warranted in assisting this Court in its decision.

# TABLE OF CONTENTS

Certificate Of Interested Persons…………………...…………………………..C1-1

Statement Regarding Oral Argument……………………….………………………i

Table of Contents…………………….…………...…………………………….…ii

Table of Citations……………………………………………………….………iv

Statement Regarding Adoption Of Briefs Of Other Parties…………….…………v

Statement of Jurisdiciton…………………………………….……………………vi

Statement of the Issues…………………….…………………………………1

I.    Whether The District Court Erred By Holding That The Defendant's 1982

Third Degree Burglary Conviction In Alabama Was A Qualifying Conviction

Under 18 U.S.C. § 924(E)?……………………...…………………………..1

Statement of the Case……………………………………………………....2

Summary of the Argument……………………………………………………6

Argument and Citations of Authority………………………………………7

I.    The District Court Erred By Holding That The Defendant's 1982 Third

Degree Burglary Conviction In Alabama Was A Qualifying Conviction Under 18

U.S.C. § 924(E)……………………………………………………7

Conclusion……………………………………………………………...10

Certificate of Compliance……………………………………………11

Certificate of Service………………………………………………...12

# TABLE OF CITATIONS

## CASES

Ex Parte Johnson, 620 So.2d 665 (Ala. 1993)...............................................8

United States v. Campbell, 888 F.2d 76, 79 (11th Cir.1989)...........................7

United States v. Wilkerson, 286 F.3d 1324, 1325 (11th Cir. 2002)...................9

## STATUTORY AND OTHER AUTHORITY

18 U.S.C. § 922(g)(1)..................................................................................2

18 U.S.C.§ 924(e)...........................................................................1,3,4,5,6,7

18 U.S.C. § 3231........................................................................................v

18 U.S.C. § 3742........................................................................................v

28 U.S.C. § 1291........................................................................................v

Eleventh Circuit Rule 26.1-1...............................................................C-1-1

Federal Rules of Appellate Procedure 26.1............................................C-1-1

Federal Rules of Appellate Procedure 32(a)(7)(B)....................................11

Federal Rules of Criminal Procedure 11 (c)(1)(C) .....................................2

Code of Alabama, 1975, § 13A-7-7..............................................................8

Code of Alabama, 1975, § 13A-11-70...........................................................8

United States Sentencing Guideline, Section 4B1.2.......................................7

United States Sentencing Guideline, Section 4B1.4.......................................4

# STATEMENT REGARDING ADOPTION OF BRIEFS OF OTHER PARTIES

Mickey Lee Moody does not adopt the brief or arguments of any other party.

## STATEMENT OF JURISDICITON

The district court had jurisdiction in this case pursuant to 18 U.S.C. § 3231 because the defendant was charged with an offense against the laws of the United States. The court of appeals has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, which give the courts of appeals jurisdiction over all final decisions and sentences of the district courts of the United States.

This is an appeal from the final judgment and sentence in the United States District Court for the Middle District of Alabama, Northern Division, the Honorable L. Scott Coogler, United States District Judge, presiding. Judgment and sentence were entered in this action on September 10, 2006. The Defendant-Appellant entered his timely Notice of Appeal on September 14, 2006.

# STATEMENT OF THE ISSUES

**I.     WHETHER THE DISTRICT COURT ERRED BY HOLDING THAT THE DEFENDANT'S 1982 THIRD DEGREE BURGLARY CONVICTION IN ALABAMA WAS A QUALIFYING CONVICTION UNDER 18 U.S.C. § 924(e)?**

## STATEMENT OF THE CASE

**(i)**     **Course of Proceedings.**

On September 8, 2005, Mickey Lee Moody was indicted in a one (1) count indictment charging that he, having been convicted on August 21, 2001, in the Circuit Court of Covington County, Alabama, under Case Number CC-2001-124 of two counts of Unlawful Possession of a Controlled Substance, both crimes punishable by imprisonment for a term exceeding one year under the laws of the State of Alabama, knowingly did possess, in and affecting commerce, a firearm and ammunition, that is: a Davis Industries, Model D-32, .32 semi-automatic pistol, serial number 100873, all in violation of Title 18, United States Code, Section 922(g)(1). (DOC 1).   On November 22, 2006, Moody appeared for arraignment and entered a plea of not guilty. (DOC 9).

The Assistant United States Attorney and counsel for the defendant, pursuant to Rule 11(c)(1)(C), Federal Rules of Criminal Procedure, and with the authorization of Mr. Moody, entered into discussions to reach a pretrial conclusion of the charge in the Indictment.  As a result of these negotiations, a plea agreement was reached (DOC 64) and Mr. Moody changed his plea to one of guilty before Magistrate Judge Walker on April 10, 2006. (DOC 65).

On September 7, 2006, Moody appeared for sentencing. At sentencing, the Court determined that Moody was subject to an enhanced sentence under the provisions of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). Moody was sentenced to 180 months in the custody of the Federal Bureau of Prisons (FBOP); 36 months of supervised release; and a $100 special assessment fee.

Judgement was entered on September 10, 2006. (DOC 80). On September 14, 2006, Moody filed a timely Notice of Appeal. (DOC 81).

## MICKEY LEE MOODY IS PRESENTLY INCARCERATED

**(ii)    Statement of Facts.**

On March 28, 2005, members of the Geneva County, Alabama Sheriff's Department were assisting members of the Covington County, Alabama Sheriff's Department search for escapees from the Covington County jail. A member of the Covington County Sheriff's Department stopped a vehicle driven by Mr. Moody in the area of Tin Top Road and County Road 5, Geneva County, Alabama. The officers instructed Mr. Moody to step out of his vehicle. Mr. Moody complied and officers saw a handgun on the right side of Mr. Moodys' belt. (DOC 83 - Pgs 3-4).

On September 8, 2005, Mr. Moody was indicted in a one (1) count indictment charging he knowingly did possess, in and affecting commerce, a firearm and ammunition, and that he had been convicted of a previous felony.

3

(DOC 1).    Counsel for the government and Mr. Moody entered into plea negotiations, and a plea agreement was reached (DOC 64).    Mr. Moody changed his plea to one of guilty before Magistrate Judge Walker on April 10, 2006. (DOC 65).

The Government's Presentence Investigation Report (DOC 83) calculated Moodys' final adjusted offense level at 30 and recommended an imprisonment range of 180 to 210 months. The Presentence Investigation Report requested that Moody receive an armed career criminal enhancement pursuant to U.S.S.G. § 4B1.4, raising his offense level to 33. The Government cited three prior felony convictions that justified the enhancement: a state burglary conviction in March 1981; a state burglary conviction September 1982; and a 1994 state controlled substance conviction. (DOC 83 – Pgs 6-9).

On September 7, 2006, Moody appeared for sentencing.    At sentencing, Moody objected to the Presentence Report in which the September 1982 third degree burglary charge and conviction was being used as a qualifying conviction to enhance his sentence under the ACCA. (Doc 86 - Pgs 3-10).    The District Court overruled Moodys' objection and sentenced him to 180 months under the provision of the ACCA.

4

**(iii)    Standard of Review.**

The Court reviews de novo whether a conviction is a violent felony or serious drug offense for purposes of the ACCA. See <u>United States v. Wilkerson,</u> 286 F.3d 1324, 1325 (11th Cir. 2002).

## SUMMARY OF THE ARGUMENT

The district court erred by holding that Mr. Moodys' 1982 conviction in Alabama for third degree burglary was a "generic" burglary so as to qualify under 18 U.S.C. § 924(e). Mr. Moody further submits that Alabama's third degree burglary statute does not fit within § 924(e)'s definition of a violent felony, and thus, the district court erred in finding Mr. Moodys' 1982 third degree burglary conviction was a predicate offense under § 924(e).

## ARGUMENT AND CITATIONS OF AUTHORITY

**I.    THE DISTRICT COURT ERRED BY HOLDING THAT THE DEFENDANT'S 1982 THIRD DEGREE BURGLARY CONVICTION IN ALABAMA WAS A QUALIFYING CONVICTION UNDER 18 U.S.C. § 924(e).**

The ACCA defines a violent felony as:

> [A]ny crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that-
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion,   involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]

18 U.S.C. § 924(e)(2)(B).

However, Section 4B1.2 application notes of the United States Sentencing Guidelines specifically defines burglary of a **dwelling** as a crime of violence. (Emphasis added). By explicitly including the burglary of a dwelling as a crime of violence, the Guidelines intended to exclude from the violent crime category those burglaries that do not involve dwellings and occupied structures. United States v. Campbell, 888 F.2d 76, 79 (11th Cir.1989).   Moody insists that his 1982 conviction for burglary third degree is not a crime of violence because the

7

conviction was for the burglary of an unoccupied drug store, after hours. Further, there was no evidence of the use of, attempted use, or threatened use of physical force during the commission of the crime, nor is it an element of the crime considered.

At the relevant time, Alabama law defined third degree burglary as "A person commits the crime of burglary in the third degree if he knowingly enters or remains unlawfully in a building with intent to commit a crime therein." Ala. Code § 13A-7-7 (1975). However, even under Alabama law, third degree burglary is not necessarily a crime of violence. Ala. Code § 13A-11-70(2) (1975) gives the following definition:

> CRIME OF VIOLENCE. Any of the following crimes or an attempt to commit any of them, namely, murder, manslaughter (except manslaughter arising out of the operation of a vehicle), rape, mayhem, assault with intent to rob, assault with intent to ravish, assault with intent to murder, robbery, **burglary**, kidnapping and larceny. (Emphasis added).

However, Section 13A-11-70 was enacted years before the current Alabama criminal code offenses were enacted. As such, burglary in the third degree as set out in the revised criminal code is not the same burglary as that term was intended by the legislature in enacting what is now § 13A-11-170.

This matter was addressed by the Alabama Supreme Court in Ex Parte Johnson, 620 So.2d 665 (Ala. 1993). Under the previous Alabama code (1940),

8

there was no offense of burglary in the third degree. The Court thus held that presentation of the "fact" of the conviction is insufficient to show proof on the element of a prior crime of violence. The actual conduct underlying the offense must be examined. Again, the underlying conduct of the 1982 burglary was that it was the burglary of a drugstore (not a dwelling), and no aggravating factors such as weapons, injuries, or threats were involved.

## CONCLUSION

Based on the foregoing arguments, reasoning, and citations of authority, Mr. Moody respectfully requests that this Court vacate his sentence and remand his case to the district court for resentencing.

Respectfully submitted,

JOHN M. POTI
AL Bar Code: POT013
Attorney for Appellant
696 N. Silver Hills Dr., STE 102
Prattville, Alabama 36066-6184
TEL: (334) 361-3535
FAX: 1-866-780-9012

10

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in

FRAP 32(a)(7)(B).  This brief contains <u>2,082</u> words.  This brief is printed in 14

point, Times New Roman type, which is proportionally spaced.


John M. Poti

## CERTIFICATE OF SERVICE

I hereby certify that I have this 13th day of November 2006, I served a copy of the foregoing Brief upon the following, by placing a copy of the same in the U.S. mail, postage prepaid and properly addressed:

Karl David Cooke, Jr., Esq.
Assistant US Attorney
One Court Square, Suite 201
Montgomery, AL 36104

JOHN M. POTI
AL Bar Code: POT013
Attorney for Defendant/Appellant
696 N. Silver Hills Dr., STE 102
Prattville, Alabama 36066-6184
TEL: (334) 361-3535
FAX: 1-866-780-9012

12

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS



GOVERNMENT
EXHIBIT

CASE
NO.

EXHIBIT
NO.

FOR THE ELEVENTH CIRCUIT

No. 06-15114
Non-Argument Calendar

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 9, 2007
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-00195-CR-C-S

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICKEY LEE MOODY,

Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of Alabama

**(February 9, 2007)**

Before BIRCH, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

Mickey Lee Moody appeals his 180-month sentence for possession of a

firearm by convicted felon, in violation of 18 U.S.C. § 922(g)(1). On appeal,

Moody argues that the district court erred by treating a 1982 conviction for third-

degree burglary of a drug store as a qualifying conviction for purposes of the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"). After careful review, we affirm.

A person convicted of a crime punishable by a term of imprisonment exceeding one year is prohibited from possessing a firearm in or affecting commerce. See 18 U.S.C. § 922(g)(1). A defendant convicted under § 922(g)(1) is subject to the sentence-enhancement provision of the ACCA, 18 U.S.C. § 924(e), which provides, inter alia, the following:

> (1) In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be . . . imprisoned not less than fifteen years. . . .
>
> . . .
>
> (2)(B) [T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year . . . that –
>
> (ii) is burglary . . . .

18 U.S.C. § 924(e)(1), (e)(2)(B). We review de novo whether a particular conviction is a violent felony for purposes of § 924(e) and the ACCA. See United States v. Day, 465 F.3d 1262, 1264 (11th Cir. 2006).

The offense of burglary, in the context of § 924(e), does not depend on the definition adopted by the state where the person was convicted. See Taylor v.

2

United States, 495 U.S. 575, 590 (1990).  Moreover, burglary for § 924 purposes is not limited to the common-law definition.  Id. at 593-96.  Rather, "a person has been convicted of a burglary for purposes of a § 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime."  Id. at 599 (emphasis added).

In determining whether a crime qualifies as a burglary, the district court should "look only to the fact of conviction and the statutory definition of the prior offense."  Id. at 602.  Applying Taylor, we have held that "a district court only may inquire into the conduct surrounding a conviction if ambiguities in the judgment make the crime of violence determination impossible from the face of the judgment itself."  United States v. Spell, 44 F.3d 936, 939 (11th Cir. 1995).  Thus, where the state statute defines burglary as unlawfully entering a structure or a conveyance, a court would not be able to determine, based solely on the judgment, if a person was convicted of burglary of a structure or of a conveyance.  Day, 465 F.3d at 1266.  Because burglary of a conveyance is not a "generic burglary" as defined in Taylor, a court may need to look at the underlying conduct in order to determine whether the conviction was a qualifying conviction.  Id.

Here, the Alabama statute, under which Moody was convicted in 1982, is

3

unambiguous.    It defines third-degree burglary as "knowingly enter[ing] or remain[ing] unlawfully in a <u>building</u> with intent to commit a crime."    Ala. Code § 13A-7-7 (emphasis added).    Simply put, because the statutory language unambiguously includes the elements of "generic burglary," as outlined in <u>Taylor</u>, and provides for a term of imprisonment greater than one year, it is a qualifying offense under § 924(e).    Accordingly, the district court did not err by sentencing Moody in compliance with § 924(e).

**AFFIRMED.**

4